Reversed and Remanded and Opinion filed April 5, 2011.

 

                                                                                                                                                            

In The

 

Fourteenth Court of
Appeals

________________________

 

NO. 14-09-00658-CR

____________

 

THE STATE OF TEXAS, Appellant

 

V.

 

JERRY M. HART, Appellee

 

 



On Appeal from the 180th District Court

Harris County, Texas

Trial Court Cause No. 1137723

 

 



NO. 14-09-00659-CR

____________

 

THE STATE OF TEXAS, Appellant

 

V.

 

WYNONNE T. HART, Appellee

 

 



On Appeal from the 180th District Court

Harris County, Texas

Trial Court Cause No. 1137726

 



O P I N I O N

            This is a State’s appeal
from an order granting a joint motion for new trial filed by a husband and wife
who had pleaded guilty to misapplication of fiduciary property and been
sentenced.  The trial court found various grounds in the motion for new trial
to be meritorious, including some grounds affecting the finding of guilt and
some grounds affecting only the assessment of punishment.  We conclude that the
trial court abused its discretion by granting this motion for new trial. 
Accordingly, we reverse the trial court’s order granting a new trial, and we
remand with instructions to reinstate the judgments of conviction and the
sentences for both spouses.

I

A

            Appellees Jerry M. Hart
and Wynonne T. Hart were indicted for misapplication of fiduciary property,
theft, and money laundering.  In exchange for dismissal of the latter two
charges, they both pleaded guilty to misapplication of fiduciary property from
a long list of complainants, without any recommendation from the State as to
punishment.  The misappropriated property had a value of more than $3 million. 
The Harts were eligible for probation and the range of punishment was 5-99
years or confinement for life.  The Harts requested probation and the State
asked for an unspecified number of years of confinement.  After considering a
presentence-investigation report (“PSI report”) for each defendant, various
documents, and the arguments of counsel, Judge Randy Roll assessed punishment
for each spouse at fourteen years’ confinement.  

            After sentencing, the
Harts obtained information indicating that, before assessing the Harts’
punishment, Judge Roll had consulted with Judge Jim Wallace, judge of the 263rd
Criminal District Court in Harris County, and that Judge Wallace had given
Judge Roll a recommendation as to the assessment of punishment for the Harts. 
Judge Roll had not disclosed to the Harts that he had received any
recommendation from Judge Wallace.  The Harts filed a motion to recuse Judge
Roll asserting several grounds, including Judge Roll’s status as a witness
regarding his conversation with Judge Wallace about the Harts’ punishment. 
Judge Roll declined to recuse himself and referred the motion to the presiding
judge of the administrative judicial district, Judge Olen Underwood.  Judge
Underwood assigned himself to hear the recusal motion. After hearing the
motion, Judge Underwood granted it.  He then appointed Judge Vann Culp to hear
the Harts’ motion for new trial or in the alternative motion for new trial as
to punishment.  After a two-day evidentiary hearing, Judge Culp granted a new
trial.  In his findings of fact and conclusions of law, Judge Culp found
various grounds asserted by the Harts to be meritorious, including some grounds
affecting the finding of guilt and some grounds affecting only the assessment
of punishment.  

            Due to the recusal of
Judge Roll, the Harts’ cases were transferred to the 180th Criminal District
Court of Harris County after Judge Culp granted a new trial.  The State appealed
the order granting new trial.  In these consolidated appeals, the State asserts
that none of the grounds are meritorious and that the trial court abused its
discretion by granting the Harts a new trial.

B

            Texas courts consistently
have held that a trial judge has authority to grant a new trial “in the
interest of justice” and that the judge’s decision to grant or deny a
defendant’s motion for new trial is reviewed only for an abuse of discretion.  See
State v. Herndon, 215 S.W.3d 901, 906 (Tex. Crim. App. 2007).  But that
discretion is not unbounded; “justice” means in accordance with the law.  See
id. at 907.  A trial judge does not have authority to grant a new trial
unless the first proceeding was not in accordance with the law.  Id.  He
cannot grant a new trial on mere sympathy, an inarticulate hunch, or simply
because he personally believes that the defendant is innocent or “received a
raw deal.”  Id.  On the other hand, a trial judge is not limited to the
mandatory new-trial grounds listed in Rule 21.3.  See Tex. R. App. P.
21.3.  That list is illustrative, not exclusive, and a trial court may grant a
motion for new trial on other legal grounds as well.  See Herndon, 215
S.W.3d at 907.  Id.  In the federal courts, any error of sufficient
magnitude to require reversal on appeal is an adequate ground for granting a
new trial.  Id.  Even errors that would not inevitably require reversal
on appeal may form the basis for the grant of a new trial if the trial judge
concludes that the proceeding has resulted in “a miscarriage of justice.”  Id. 
Although not all of the grounds for which a trial court may grant a motion for
new trial need be listed in a statute or a rule, the trial court does not have
discretion to grant a new trial unless the defendant shows that he is entitled
to one under the law.  Id.  To grant a new trial for a non-legal or
legally invalid reason is an abuse of discretion.  Id.  

        The test for
abuse of discretion is not whether, in the opinion of the reviewing court, the
facts present an appropriate case for the trial court’s action; rather, it is a
question of whether the trial court acted without reference to any guiding
principles or in an arbitrary or unreasonable manner.  See id.; Charles v. State, 146 S.W.3d 204, 208
(Tex. Crim. App. 2004), superseded
in part on other grounds by Tex. R. App. P. 21.8(b), as recognized in State v. Herndon, 215 S.W.3d 901, 905 n.
5 (Tex. Crim. App. 2007).  We
view the evidence in the light most favorable to the trial court’s ruling;
defer to its credibility determinations; and presume all reasonable factual
findings that could have been made in support of the court’s ruling.  Charles,
146 S.W.3d at 208.  A trial court abuses its discretion only when no reasonable
view of the record could support its ruling.  Id.  The mere fact that a trial court may
decide a matter within its discretionary authority differently than an
appellate court would decide it does not demonstrate an abuse of discretion.  Herndon,
215 S.W.3d at 907–08.    

            While a trial court has
wide discretion in ruling on a motion for new trial which sets out a valid
legal claim, it should exercise that discretion by balancing a defendant’s
“interest of justice” claim against the interests of the public in finality and
the harmless-error standards set out in Rule 44.2.  See Tex. R. App. P.
44.2; Herndon, 215 S.W.3d at 908.  Trial courts should not grant a new
trial if the defendant’s substantial rights were not affected.  Herndon,
215 S.W.3d at 908.  Otherwise, the phrase “interest of justice” would have no
substantive legal content; it would be a mere platitude covering a multitude of
unreviewable rulings.  Herndon, 215 S.W.3d at 908.

            Though the Court of
Criminal Appeals has not set out bright-line rules concerning appellate review
of a trial court’s granting of a motion for new trial, our high court has
concluded that a trial court generally would not abuse its discretion in
granting a motion for new trial if the defendant:  (1) articulated a valid
legal claim in his motion for new trial; (2) produced evidence or pointed to
evidence in the trial record that substantiated his legal claim;  and (3)
showed prejudice to his substantial rights under the standards in Rule 44.2 of
the Texas Rules of Appellate Procedure.  Id. at 909. The defendant need
not establish reversible error as a matter of law before the trial court may
exercise its discretion in granting a motion for new trial.  Id.  And
there is no requirement that, before a trial court may grant a motion for new
trial, the moving party must show that he has timely preserved his claim of
error for appeal.  Id.  Nevertheless, trial courts lack the discretion
to grant a new trial unless the defendant demonstrates that his first trial was
seriously flawed and that the flaws adversely affected his substantial rights
to a fair trial.  Id.  

II

            Judge Culp granted a new
trial based on many, but not all, of the grounds asserted by the Harts in the
trial court.  Judge Culp also granted a new trial based on grounds not asserted
by the Harts in the trial court.  We will address all of the grounds asserted
by the Harts in the trial court or cited by Judge Culp as a basis for granting
a new trial.  These grounds may be grouped in the following categories: (1)
alleged conflicts of interest, (2) alleged misconduct by the grand-jury
foreman, (3) alleged involuntary guilty pleas, (4) alleged errors relating to
extraneous offenses, (5) allegedly improper discussion between Judge Roll and
Judge Wallace, and (6) absence of witness testimony at the punishment hearing.

 

            A.         Alleged Conflicts of
Interest

            Up until the trial
court’s assessment of punishment, Jerry and Wynonne were represented by the
same law firm.  The Harts asserted in their motion for new trial that their
representation by the same law firm created two conflicts of interest.  One
allegedly arose from incriminating statements made by Jerry during the
bankruptcy case for the Harts’ businesses.  The second conflict of interest
allegedly arose from the different business roles played by Jerry and Wynonne;
according to the Harts, these different roles would have allowed Jerry to argue
that he had no knowledge of the accounting procedures of his business and
therefore had less culpability than his wife.  The trial court concluded that
there was an actual conflict of interest based on the joint representation, but
that the Harts waived this conflict of interest.

            To obtain a new trial
based on their trial counsel’s alleged conflict of interest, the Harts had to
show that (1) an actual conflict of interest existed; and (2) trial counsel
actually acted on behalf of those other interests during the trial.  See
Acosta v. State, 233 S.W.3d 349, 355 (Tex. Crim. App. 2007).  An actual
conflict of interest exists if counsel is required to make a choice between
advancing his client’s interest in a fair trial or advancing other interests to
the detriment of his client’s interest.  See id.  To show an actual
conflict of interest, the Harts must identify specific instances reflecting a
choice made by the Harts’ counsel that was harmful to one of them and helpful to
the other.  See Gaston v. State, 136 S.W.3d 315, 318 (Tex. App.—Houston
[1st Dist.] 2004, pet. stricken) (en banc).  

            Stacey Bond, the Harts’
lead counsel during their guilty pleas and punishment hearing, testified as
follows at the hearing on the motion for new trial:  

(1)       Bond believed she conducted a thorough
investigation of this case before the Harts agreed to plead guilty. 

 

(2)       She believed that the Harts were guilty of
misapplication of fiduciary property and that the evidence of their guilt was
overwhelming.

 

(3)       Bond wanted the Harts to plead guilty to
this offense because she thought that “a trial would be devastating for them in
terms of punishment.”

 

(4)       She did not think that an actual conflict of
interest existed during her representation of the Harts.  

 

According to Bond, the potential
conflict of interest never became an actual conflict of interest.  As finder of
fact, the trial court could have disbelieved this testimony.  Nonetheless, even
ignoring this testimony, no other witness testified regarding specific
instances reflecting a choice by the Harts’ counsel that was harmful to one of
them and helpful to the other.  Though the evidence supported the conclusion
that the joint representation of the Harts’ created a potential conflict of
interest, the evidence was legally insufficient to support a finding that an
actual conflict of interest arose.  See James v. State, 763 S.W.2d 776,
778–82 (Tex. Crim. App. 1989); Gaston, 136 S.W.3d at 318–22.  After
reviewing the record under the applicable standard of review, we conclude that
the trial court abused its discretion to the extent it granted a new trial
based on the conflict-of-interest ground. 

            B.         Alleged
Misconduct by the Grand Jury Foreman

            The trial court found that the Harts’
convictions were tainted by misconduct committed by the foreman of the grand
jury that indicted the Harts.  Based on this alleged taint, the trial court
granted the Harts a new trial.  In this regard, the trial court found as
follows:  

(1)       Robert Ryan served as the foreman of the
grand jury that issued the indictments against the Harts. 

 

(2)       Ryan was present when a prosecutor presented
evidence to the grand jury on these cases.  

 

(3)       Ryan considered the evidence presented about
the Harts’ criminal conduct to be compelling and overwhelming.

 

(4)       The grand jury issued three indictments
against each of the Harts.

 

(5)       Robert Ryan called Ben Crump, an
acquaintance not serving on the grand jury, to “brag” about indicting the
Harts.  Ryan told Crump about information Ryan had obtained through the
grand-jury proceedings.  Ryan told Crump that the Harts cheated Ryan out of
money in a prior business transaction, that the Harts had cheated others, and
that they were crooks.

 

(6)       Before presiding as foreman of the Harts’
grand jury, Ryan had business dealings with the Harts.  Ryan was dissatisfied
with his business dealings with the Harts and felt that the Harts had taken
advantage of him.  Ryan had a negative opinion of the Harts before obtaining
any information from the State regarding its investigation of the Harts.

 

(7)       Ryan violated the secrecy rules of the grand
jury and violated the part of his oath as a grand juror in which he swore “to
present no person from envy, hatred, or malice.”

 

(8)       The trial court found it particularly
instructive that Judge Jim Wallace, who appointed Ryan to this grand jury,
testified that he would not appoint Ryan to any grand jury in the future and
that if he were Ryan, he would have recused himself from hearing any
information regarding the Hart investigation.

 

The trial court did not find that any
other grand juror engaged in misconduct.  The trial court did not find that
Ryan told the other grand jurors of his experiences with the Harts or
communicated his bias against the Harts to the other grand jurors.[1] 
The trial court concluded that Ryan, the grand-jury foreman who signed the
indictment of the Harts, was biased against the Harts and that the Harts were
not indicted by a grand jury composed of all unbiased members.  Therefore, the
trial court granted the Harts a new trial.

            It is well-established
that defendants cannot challenge the sufficiency of the evidence to support a
grand-jury indictment.  See Costello v. United States, 350 U.S. 359,
362–64, 76 S. Ct. 406, 408–09, 100 L.Ed. 397 (1956); Brooks v. State,
642 S.W.2d 791, 795–96 (Tex. Crim. App. 1982); State v. Zoch, 846 S.W.2d
588, 589 (Tex. App.—Houston [14th Dist.] 1993, no pet.).  In rejecting such
challenges, courts have stated that an indictment
returned by a legally constituted and unbiased grand jury, if
valid on its face, is enough to call for trial of the charge on the merits.  See
Costello, 350 U.S. at 362–64, 76 S. Ct. at 408–09; Brooks, 642
S.W.2d at 795–96; Zoch, 846 S.W.2d at 589.  Research has not revealed
and the parties have not cited any case addressing what remedy, if any, is
available to a defendant when the grand-jury foreman was biased against the
defendant.  This dearth of case law is not surprising given that grand-jury
proceedings are secret.  See Tex. Code Crim.
Proc. art. 20.02 (stating that grand-jury
proceedings shall be secret and that disclosure of anything transpiring before
a grand jury, absent limited exceptions, is punishable by fine and
imprisonment).

            The Harts
sought and obtained a new trial based on Ryan’s alleged bias, but the Harts
have not sought dismissal of the indictments on this basis.  Indeed, their
prior counsel, Bond, testified that the Harts were aware (1) that someone on
the grand jury that indicted them was “leaking” information; and (2) of the
conversation that Ryan had with Crump, the Harts’ longtime friend and an
employee at Hart Galleries for 17 years.  Bond testified that she could have
complained of problems regarding the grand jury but chose not to do so.  Even
if she had been able to have the indictments set aside, Bond believed that the
evidence against the Harts would prompt re-indictment.  Bond stated that the
Harts had litigated at length with the State on the amounts of the bonds for
the six indictments, and that she would not want to repeat that process.

            Presuming for
the sake of argument that Ryan engaged in the misconduct found by the trial
court, we conclude that such misconduct would not entitle the Harts to a new
trial—especially since any new trial would be a trial on the same indictments. 
The most the Harts might be entitled to as a result of Ryan’s alleged
misconduct is to have the indictments set aside, and they have not requested
this relief.  After
reviewing the record under the applicable standard of review, we conclude that
the trial court abused its discretion to the extent it concluded that the Harts
were entitled to a new trial based on any alleged misconduct by Ryan during the
grand-jury proceedings.

            C.        Alleged Involuntary Pleas
Due To Insufficient Evidence

            In one ground of their
motion, the Harts asserted that their guilty pleas were involuntary because, as
a matter of law, they could not be liable for misapplication of fiduciary
property; at all relevant times, they argued, they were each acting as “a commercial
bailee” exempted from the definition of “fiduciary” under section 32.45 of the
Texas Penal Code.  See Tex. Penal Code § 32.45(a)(1) (excluding from the
definition of “fiduciary” “a commercial bailee unless the commercial bailee is
a party in a motor-fuel-sales agreement with a distributor or supplier, as
those terms are defined by Section 153.001, Tax Code”).  We presume for the
sake of argument that the Harts’ guilty pleas would be involuntary if the Harts
fell within this statutory exception. 

            The word “commercial
bailee” is not defined in the Penal Code.  However, the ordinary meaning of
“bailee” is a “person to whom goods are committed in
trust and who has a temporary possession [of the goods] for the purposes of the
trust.” See Talamantez v. State, 790 S.W.2d 33, 36 (Tex. App.—San
Antonio 1990, pet. ref’d).  The ordinary meaning of a “bailment,” the
acceptance of goods by a bailee, is “a delivery of personal property by a
bailor to a bailee for specific purposes under an express or implied agreement
of the parties that when those purposes are accomplished the property will be
returned to the bailor, kept until he reclaims it, or disposed of according to
the agreement.”  See id.  The adjective “commercial” means that the
bailee accepts bailments of goods for a fee or as a part of his business.  See
id.  However, the property that the Harts were charged with misapplying was
the cash proceeds of many consignment sales, and the Harts did not hold this
property as a commercial bailee.  See Coleman v. State, 131 S.W.3d 303,
309 (Tex. App.—Corpus Christi 2004, pet. ref’d); Talamantez, 790 S.W.2d
at 36.  The trial court found that this ground lacked merit, and we agree.  




 

            D.        Alleged Involuntary Pleas
Due To Allegedly Erroneous Advice of Counsel

            The Harts also asserted
that their guilty pleas were involuntary because they were based upon the
mistaken advice of their counsel, Stacey Bond.  The trial court found as
follows:

(1)       When Judge Randy Roll assessed punishment,
he had only been a judge for a few months. 

 

(2)       Before he assessed punishment, Judge Roll
contacted Judge Wallace and asked his opinion about a proper sentence for the
Harts.

 

(3)       Judge Wallace told Judge Roll that he “would
start at 15 years.”

 

(4)       Judge Roll assessed punishment for each of
the Harts at 14 years’ confinement.

 

(5)       Bond was familiar with Judge Wallace and
knew that he was harsh on people charged with theft.

 

(6)       Bond did not know that Judge Roll would ask
Judge Wallace his opinion as to a proper sentence for the Harts.

 

(7)       If Bond had known that Judge Roll would ask
Judge Wallace his opinion in this regard, she would not have advised the Harts
to proceed with an “open” plea of guilty before Judge Roll.

 

(8)       Judge Roll was influenced by Judge Wallace’s
recommendation of punishment for the Harts.

 

The trial court concluded that the
Harts’ guilty pleas were involuntary because they were based on mistaken or
inadequate advice of counsel.  

Because
the Harts challenged the voluntariness of their guilty pleas made upon the
advice of counsel, they had the burden of proving by a preponderance of
evidence in the court below that (1) Bond’s representation during the plea
process fell below an objective standard of reasonableness, and (2) Bond’s
deficient performance prejudiced the Harts.  See Ex parte Battle, 817
S.W.2d 81, 83–84 (Tex. Crim. App. 1991).  In making this determination, courts
indulge a strong presumption that (1) counsel’s actions and decisions were
reasonably professional and were motivated by sound trial strategy, and (2)
that counsel’s conduct fell within the wide range of reasonable professional
assistance.  See Thompson v. State, 9 S.W.3d 808, 813 (Tex. Crim. App.
1999). 

            For the purpose of this
analysis, we presume that (1) Judge Roll was influenced by Judge Wallace’s
recommendation of punishment for the Harts; and (2) Judge Roll erred in so
doing.  But any such error by Judge Roll would not make Bond’s advice
deficient.  Bond testified that she thoroughly investigated this case before
advising the Harts to plead guilty.  Bond concluded that there was overwhelming
evidence that both of the Harts were guilty of misapplication of fiduciary
property, and that the Harts’ punishment would be more severe if they went to
trial than if they pleaded guilty.  Bond stated that it was her belief that the
Harts should plead guilty to misapplication of fiduciary property. The trial
court did not find that Bond’s representation during the plea process fell
below an objective standard of reasonableness.  Other than Bond’s testimony,
there was no evidence at the motion for new trial hearing regarding Bond’s
advice to the Harts as to their decision to plead guilty or her representation
of the Harts during the plea process.[2] 
The evidence at the motion-for-new-trial hearing did not rebut the strong
presumption that Bond’s representation during the plea process was reasonable
and motivated by sound trial strategy.[3]

            Nonetheless, the trial
court appears to have concluded that Bond’s advice was rendered erroneous and
deficient because Judge Roll erroneously relied upon the advice of Judge
Wallace.  Bond did not advise the Harts that, in assessing their punishment,
Judge Roll might rely upon Judge Wallace’s advice, and there was no evidence
that a reasonably competent lawyer would have done so.  Even if Judge Roll
erred in consulting with Judge Wallace, this error would not make Bond’s
performance deficient because she did not predict this scenario or advise the
Harts that it might occur.  The Harts have not identified an allegedly
erroneous statement that Bond made to them regarding their decision to plead
guilty, nor have they identified any advice that a reasonably competent lawyer
would have given them but that Bond failed to give the Harts.  

            The trial court also
appears to have concluded that the Harts’ pleas were involuntary because they
received a copy of the PSI reports about one week before the trial court
assessed punishment, and these reports contained statements and letters of
which Bond had no prior knowledge.  In its findings of fact and conclusions of
law, the trial court indicated that this allegedly tardy disclosure caused the
Harts to plead guilty based upon inadequate advice of counsel because Bond
received the PSI reports only about one week before assessment of punishment. 
Again, the trial court did not find that Bond’s performance was deficient;
instead, the trial court indicated that Bond’s advice was necessarily
inadequate because of the State’s allegedly untimely disclosure.[4]  
However, article 42.12, section 9, of the Texas Code of Criminal Procedure, which governs presentence investigations, contains no
notice requirement; it requires that the defendant or his counsel be permitted
to read the PSI report at least 48 hours before sentencing.  See Tex. Code Crim. Proc. art. 42.12, § 9(d).  In addition, the
Court of Criminal Appeals has stated generally that the rules of evidence do
not apply to the contents of a PSI report.  See Fryer v. State, 68
S.W.3d 628, 631 (Tex. Crim. App. 2002).  The trial court erred as a matter of
law in concluding that the disclosure of the information in the PSI reports was
untimely.

            The trial court did not
find that Bond’s representation during the plea process fell below an objective
standard of reasonableness, and the evidence was legally insufficient to
support such a finding. After reviewing the record under the applicable
standard of review, we conclude that the trial court abused its discretion to the
extent it concluded that the Harts’ guilty pleas were involuntary because they
were based upon mistaken or inadequate advice of counsel.[5] 
See Starz v. State, 309 S.W.3d 110, 122–23 (Tex. App.—Houston [1st
Dist.] 2009, pet. ref’d); Fimberg v. State, 922 S.W.2d 205, 208 (Tex.
App.—Houston [1st Dist.] 1996, pet. ref’d).

            E.         Alleged
Errors Relating to Extraneous Offenses

            In another part of their
motion, the Harts sought a new trial as to punishment based on alleged errors
relating to extraneous offenses or bad acts.  The trial court sustained this
ground, finding as follows:

(1)       Bond received a copy of the PSI reports
about one week before the punishment hearing.  The reports contained
information indicating the Harts had committed extraneous offenses.  Bond was
not aware of these extraneous offenses before she obtained the PSI reports.

 

(2)       Judge Roll reviewed the references to
extraneous offenses in the PSI reports and referred to these extraneous
offenses during the punishment hearing.

 

(3)       The State did not provide the Harts with
adequate notice of the extraneous offenses contained in the PSI reports.

 

(4)       The State did not show beyond a reasonable
doubt by evidence that 

            the Harts committed any extraneous
offenses or bad acts.

 

(5)       In sentencing the Harts, Judge Roll violated
the Harts’ constitutional rights by relying upon evidence of extraneous
offenses even though the Harts did not have an adequate opportunity to
challenge this evidence.

 

(6)       Judge Roll erred in relying upon the
extraneous offenses because the State did not prove these offenses beyond a
reasonable doubt as required by article 37.07, section 3(a)(1) of the Texas
Code of Criminal Procedure.

 

(7)       At the punishment hearing, the Harts were
denied their rights under the Sixth Amendment to the United States
Constitution; article I, section 10, of the Texas Constitution; and article
37.07 of the Texas Code of Criminal Procedure.

 

            As noted in the previous
section, the disclosure of the information in the PSI
reports was timely as a matter of law.  See Tex. Code Crim. Proc. art. 42.12, § 9(d).  In addition, to
the extent that the trial court concluded that the State failed to give the
Harts notice of its intent to introduce evidence of extraneous offenses or bad
acts under article 37.07, section 3(g), notice under this section is not
required as to references to extraneous offenses and bad acts in the PSI
reports.  See Tex. Code Crim. Proc.
art. 37.07, § 3(g) (stating that, “[o]n timely request of the defendant,
notice of intent to introduce evidence under this article shall be given in the
same manner required by Rule 404(b), Texas Rules of Evidence”); id. art.
37.07, § 3(d) (distinguishing between trial court’s hearing of evidence
introduced by the parties under article 37.07, section 3(a)(1) and the trial
court’s consideration of the PSI report when the trial court assesses
punishment); Smith v. State, 227 S.W.3d 753, 763 (Tex. Crim. App. 2007)
(concluding that under the plain language of article 37.07, section 3(d), the
Legislature placed no conditions upon the trial court in considering the
contents of a PSI report); Fryer, 68 S.W.3d at 631 (stating that the
rules of evidence generally do not apply to the contents of a PSI report and
that the trial court can consider the contents of a PSI report, even if the
contents are hearsay or would not have been admissible if offered into evidence
at the punishment hearing).  

            To the extent
the trial court
concluded that the State was required to prove beyond a reasonable doubt that
the Harts committed all extraneous offenses or bad acts referred to in the PSI
reports, the trial court erred as a matter of law.  See
Smith, 227 S.W.3d at 763 (holding that
article 37.07, section 3(a)(1) does not prohibit a trial court, in assessing
punishment, from considering extraneous offenses or bad acts contained
in the PSI report, even there is no proof beyond a reasonable doubt that the
defendant committed these extraneous offenses or bad acts).  To the extent the
trial court concluded that the alleged lack of notice and the Harts’ inability
to cross-examine or confront the persons responsible for statements in the PSI
reports regarding extraneous offenses, the trial court erred as a matter of
law.  See Stringer v. State, 309 S.W.3d 42, 48 (Tex. Crim. App. 2010) (holding that
defendant’s Confrontation Clause rights were not violated by extraneous-offense
information in the PSI report because the Confrontation Clause does not apply
to the contents of a PSI report in a non-capital case in which the defendant
has elected to have the trial court assess punishment). 

            Finally, Bond
testified that (1) she had a copy of the PSI reports for approximately a week
before the punishment hearing; (2) she objected to some items in the PSI
reports; and (3) she could have objected to other items in the PSI reports or
moved for a continuance of the punishment hearing but did not do so for reasons
of strategy.  This testimony was uncontroverted.  We conclude that there is
legally insufficient evidence to support the trial court’s finding that the Harts did not have an adequate
opportunity to challenge any references to extraneous offenses in the PSI
reports.  To the extent the trial court concluded
that Judge Roll violated the Harts’ due-process or other constitutional
rights by relying upon references to extraneous offenses in the PSI reports
that the Harts did not have an adequate opportunity to challenge, we conclude
that the trial court abused its discretion.  

            After reviewing the
record under the applicable standard of review, we conclude that the trial
court abused its discretion to the extent it concluded that the Harts were
entitled to a new trial or a new trial on punishment based on the foregoing
alleged errors relating to extraneous offenses and the PSI reports.  See Tex. Code Crim.
Proc. art. 42.12, § 9(d); id. art. 37.07, § 3; Stringer,
309 S.W.3d at 48; Smith, 227 S.W.3d at 763; Fryer, 68 S.W.3d at
631.  

            F.         Allegedly
Improper Discussion Between Judge Roll and Judge Wallace

            The Harts also sought a
new trial based on Judge Roll’s conversation with Judge Wallace.  The trial
court sustained this ground, finding as follows:

 (1)      Before he assessed punishment, Judge Roll
contacted Judge Wallace and asked his opinion about a proper sentence for the
Harts.

 

(2)       Judge Wallace told Judge Roll that he “would
start at 15 years.” Judge Wallace had no access to the PSI reports or any
evidence in this case.  Judge Wallace was not named or sworn as a witness in
this case.  

 

(3)       Judge Roll was influenced by Judge Wallace’s
recommendation of punishment for the Harts.  Judge Roll’s assessment of
punishment at 14 years’ confinement for each of the Harts was just one year
less than the punishment recommended by Judge Wallace.  

 

(4)       Punishment for the Harts was based on hearsay
letters in the PSI reports and the recommendation of Judge Wallace, an
unidentified, unsworn witness, whom the Harts’ counsel had no opportunity to
cross-examine.

 

(5)       At the punishment hearing, the Harts were
denied their rights under the Sixth and Fourteenth Amendments to the United
States Constitution, article I, section 10, of the Texas Constitution, and
articles 1.05, 1.25, and 37.07 of the Texas Code of Criminal Procedure.

            1.         Alleged
Failure to Consider Full Range of Punishment

            Though the trial court
may have found a due-process violation based upon Judge Roll’s conversation
with Judge Wallace outside the presence of the parties and counsel, the trial
court did not find a due-process violation based on an alleged failure by Judge
Roll to consider the entire range of punishment.  Nonetheless, because the
Harts assert that Judge Roll did not consider the full range of punishment, we
examine this issue.

            Due process requires
trial judges to be neutral and detached in assessing punishment.  See Brumit
v. State, 206 S.W.3d 639, 645 (Tex. Crim. App. 2006).  A trial court denies
a defendant due process when it arbitrarily refuses to consider the entire
range of punishment or imposes a predetermined punishment.  See id.; McClenan
v. State, 661 S.W.2d 108, 110 (Tex. Crim. App. 1983); Jaenicke v. State,
109 S.W.3d 793, 796 (Tex. App.—Houston [1st Dist.] 2003, pet. ref’d).  Absent a
clear showing to the contrary, we presume that Judge Roll was neutral and
detached in assessing the Harts’ punishment and that Judge Roll considered the
full range of punishment.  See Brumit, 206 S.W.3d at 645; Jaenicke,
109 S.W.3d at 796.  

            We presume for the sake
of argument that, as argued by the Harts, Judge Wallace’s testimony would
support a finding that Judge Wallace told Judge Roll to start at 15 years’
confinement and then increase the number of years, if a longer sentence would
be appropriate based upon the circumstances of the case, without mentioning the
possibility of a punishment less than 15 years’ confinement.  If Judge Roll
followed this advice, then he would not consider the possibility of probation
or of confinement for 5-14 years.  The issue then is whether the evidence was
sufficient to rebut the presumption that Judge Roll considered the full range
of punishment.

            Significantly, the Harts
could have but did not call Judge Roll as a witness at the hearing on their
motion for new trial.  Therefore, our record lacks any testimony by Judge Roll
regarding his conversation with Judge Wallace or whether Judge Roll considered
the full range of punishment.  See Ex parte Brown, 158 S.W.3d 449,
453–56 (Tex. Crim. App. 2005) (considering trial judge’s testimony at
habeas-corpus hearing in determining whether judge violated due process by
refusing to consider the full range of punishment).  

            At the punishment
hearing, Judge Roll stated that he had spent about 20 hours reviewing the PSI
reports and had read all of the more than 180 letters that people had sent
regarding the assessment of the Harts’ punishment.  Judge Roll said that this
was the most difficult case he had had since becoming a judge earlier in the
year.  Judge Roll read Jerry’s 11-page, single-spaced letter to Judge Roll, as
well as Wynonne’s 8-page, single-spaced letter.  Judge Roll stated that these
letters were self-serving and indignant, and that the Harts did not take any
responsibility for their actions in these letters.  Judge Roll stated that he
saw arrogance rather than contrition.  Judge Roll assessed punishment for each
of the Harts at 14 years and stated that their punishment would have been much
higher than that had they not made statements at the punishment hearing taking
some responsibility for their actions.  Judge Roll’s statements at the
punishment hearing reflect that he considered the full range of punishment and
assessed punishment based upon an independent assessment of the facts and
circumstances shown by the PSI reports, the evidence introduced at the
punishment hearing, and the Harts’ statements to the trial court at the
punishment hearing.  Judge Roll’s statements do not reflect that he imposed a
punishment that he determined before considering the evidence, PSI reports, and
the parties’ arguments.

            Judge Wallace testified
that he had not spoken to Judge Roll in 10 years when Judge Roll called to ask
his recommendation regarding the Harts’ sentencing.  There was no evidence that
Judge Wallace talked to Judge Roll after the Harts’ punishment hearing or that
Judge Wallace had any basis for knowing how Judge Roll made his determination
regarding assessment of punishment.  Judge Wallace stated that he knew Judge
Roll would not simply follow Judge Wallace’s advice and that Judge Roll’s
assessment of punishment at one year less than where Judge Wallace said he
would start showed that Judge Roll made his own decision regarding punishment. 


            There is no evidence in
the record that reasonably could be found to rebut the presumption that (1)
Judge Roll was neutral and detached in assessing punishment, (2) Judge Roll
considered the full range of punishment, and (3) Judge Roll made his own
independent judgment regarding punishment, rather than assessing a
predetermined punishment based on Judge Wallace’s recommendation.  See Gaal
v. State, No. PD-0516-10, —S.W.3d—, —, 2011 WL 709698, at *6 (Tex. Crim.
App. Mar. 2, 2011) (“The trial judge never intimated, nor is there anything in
the record that would logically support a finding, that he would not fairly
consider the entire range of punishment”); Brumit, 206 S.W.3d at 645; McClenan,
661 S.W.2d at 110; Jaenicke, 109 S.W.3d at 796.  Because there is no
record evidence that reasonably would support a finding that Judge Roll failed
to consider the full range of punishment, this argument does not provide a
basis for affirming the trial court’s order.

            2.         Judge
Roll’s consultation with Judge Wallace

            The trial court granted a
new trial based upon Judge Roll’s conversation with Judge Wallace outside the
presence of the parties and counsel, and with no notice to the parties that the
conversation occurred.  The trial court concluded that Judge Wallace was an
unsworn witness on the punishment issue whom the Harts had no opportunity to
cross-examine.  The trial court concluded that this conversation with Judge
Wallace violated the Harts’ rights under the Confrontation Clause,[6]
article 37.07,[7]
and their procedural due-process rights.[8] 
The State responds that Judge Roll’s conversation with Judge Wallace was proper
and cannot have violated the Harts’ rights because such conversations are
excluded from the prohibition against ex parte communications in the Texas Code
of Judicial Conduct.  See Tex. Code of Judicial Conduct, Canon 3(B)(8)
(stating that a judge shall not initiate, permit, or consider ex parte
communications but that this subsection does not prohibit “consulting with
other judges”); see also ABA Model Code of Judicial Conduct, R.
2.9(A)(3) (2007) (stating “a judge may consult . . . with other judges,
provided the judge makes reasonable efforts to avoid receiving factual
information that is not part of the record, and does not abrogate the
responsibility personally to decide the matter”).

Under the Confrontation Clause, the Harts have a
constitutional right to be physically present in the courtroom at every stage
of the trial, to be confronted with the witnesses against them, and to have an
opportunity to cross-examine those witnesses.  See Garcia v. State, 149
S.W.3d 135, 140 (Tex. Crim. App. 2004); Baltierra v. State, 586 S.W.2d
553, 556 (Tex. Crim. App. 1979).  However, if, as provided in the Code of
Judicial Conduct, a consultation between two judges is not an ex parte
communication, then the parties and their counsel would not need to be present
during such consultations.  The parties have not cited and research has not
revealed any Texas precedent on this issue.

            We first examine what the
record shows about Judge Roll’s consultation with Judge Wallace.  Though Judge
Roll asked Judge Wallace for his recommendation regarding assessment of the
Harts’ punishment, Judge Roll provided Judge Wallace with no facts about the
case.  Judge Wallace was the judge of another district court in Harris County. 
Judge Wallace had not previously been recused or disqualified in the Harts’
cases and did not serve on a court that might exercise appellate jurisdiction
over a judgment rendered by Judge Roll in the Harts’ cases.  As discussed
above, the record reflects that Judge Roll considered the full range of
punishment and made his own independent judgment.

            Under these
circumstances, the parties have not cited and research has not revealed any
cases holding that consulting with another judge must be done before the
parties as part of the trial proceedings or that the other judge’s advice is
witness testimony.  Several cases from other jurisdictions support the
proposition that the consultation of another judge regarding an aspect of a
pending case does not constitute an ex parte communication, testimony
triggering rights under the Confrontation Clause, or a part of the trial that
must occur in the courtroom with the parties and their counsel present.  See
People v. Hernandez, 160 Cal. App. 725, 742–49 (Cal. Ct. App. 1984)
(concluding there was no due-process violation when trial judge consulted
another trial judge by telephone and without presence of the parties about an
issue relevant to assessment of punishment in a pending case in which the first
judge was to assess punishment);  People v. Mote, 627 N.E.2d 1253, 1255
(Ill. Ct. App. 1994) (stating that, though a trial judge’s consultation with
members of the public or with the complainant outside the presence of the
prosecutor, defendant, and defendant’s counsel violate a defendant’s rights to
confrontation, discussions between judges regarding assessment of punishment in
pending cases is permitted); Cannon v. State, 866 N.E.2d 770, 773 (Ind.
2007) (stating that, as permitted by the Indiana Code of Judicial Conduct, a
judge may discuss issues touching upon a specific case with another judge, but
the judge must exercise independent judgment);  McKenzie v. State, 583
N.W.2d 744, 747–48 (Minn. 1998) (holding that judges presiding over related
criminal cases could consult with each other in private to discuss potential
issues related to these cases as long as the judges did not predetermine a
ruling before hearing and considering the parties’ arguments); In re
Conservatorship of Bardwell, 849 So.2d 1240, 1246 & n.6 (Miss. 2003)
(endorsing trial court’s consultation with another trial judge with thirty
years of judicial experience about an issue in a pending case).

            Though the trial court
concluded that, by giving his recommendation, Judge Wallace became a witness in
the case, the Harts have not asserted that Judge Wallace gave testimony.  We
conclude that no reasonable view of the record supports a finding that Judge
Wallace testified, was a witness, or that his conversation with Judge Roll was
part of the trial proceedings; thus, the Harts’ rights under the Confrontation
Clause and article 37.07 were not violated as a matter of law.  See Mote,
627 N.E.2d at 1255; McKenzie, 583 N.W.2d at 747–48.  In addition,
because this consultation does not constitute an ex parte communication under
the Texas Code of Judicial Conduct, this consultation did not have to occur in
the presence of the parties or their counsel, and it did not violate the Hart’s
rights to procedural due process as a matter of law.  See Tex. Code of
Judicial Conduct, Canon 3(B)(8); Hernandez, 160 Cal. App. at 742–49.  

            3.         Hearsay
Letters in the PSI Reports

            The trial court also
granted a new trial based upon Judge Roll’s alleged error in determining
punishment based upon letters in the PSI reports that were hearsay.  However,
the Court of Criminal Appeals has held that the PSI statute authorizes trial
courts to consider information in the PSI report that is hearsay.  See Fryer, 68 S.W.3d
at 631; Brown v. State, 478 S.W.2d 550, 551 (Tex. Crim. App. 1972).  To
the extent the trial court concluded that Judge Roll erred by considering
letters in the PSI reports that were hearsay, the trial court erred as a matter
of law.  See Fryer, 68 S.W.3d at 631; Brown, 478 S.W.2d at 551.

            After reviewing the
record under the applicable standard of review, we conclude that the trial
court abused its discretion to the extent it concluded that the Harts were
entitled to a new trial or a new trial on punishment based on the foregoing
alleged errors relating to hearsay and Judge Roll’s consultation with Judge
Wallace.

            G.        Absence of
Witness Testimony at the Punishment Hearing

            The trial court also
granted a new trial based upon a finding that no legally authorized punishment
hearing occurred because no witnesses testified in open court at the punishment
hearing as allegedly required by article 37.07, section 3(d).  See Tex. Code Crim. Proc.
art. 37.07, § 3(d).  The trial court’s
findings indicate that this ground was not raised by the Harts, and the record
reflects that the Harts did not assert this argument in their motion for new
trial, their supplement thereto, or in their arguments at the hearing. 
Therefore, to the extent the trial court granted new trial based upon
this ground, the trial court erred as a matter of law.  See Clarke v. State,
270 S.W.3d 573, 579–80 (Tex. Crim. App. 2008); State v. Provost, 205
S.W.3d 561, 566 (Tex. App.—Houston [14th Dist.] 2006, no pet.).   

            In any event, the
relevant portion of article 37.07, section 3(d) simply refers to the hearing of
evidence under article 37.07, section 3(a)(1).  See Tex. Code Crim. Proc.
art. 37.07, § 3(d).  Under section
3(a)(1), “evidence may be offered by the state and the defendant as to any
matter the court deems relevant to sentencing.”  See id. art.
37.07, § 3(a)(1).  Under the unambiguous language of these statutes, there is
no requirement that evidence in the form of live testimony be given at a
punishment hearing. See id. art. 37.07,
§ 3.  The parties had an opportunity to offer evidence, and the trial court
admitted documentary evidence at the punishment hearing.  The parties could
have offered sworn testimony in open court at the punishment hearing, but they
chose not to.  Judge Roll conducted a legally authorized punishment
hearing as to both of the Harts.   

            H.        Interest of Justice

            The trial court also
stated that, based on the totality of the circumstances, it was granting a new
trial in the interest of justice.  On appeal, the Harts argue in part that this
court can affirm the trial court’s order on this basis alone.  A trial judge
has discretion to grant or deny a motion for new trial “in the interest of
justice,” but “justice” means in accordance with the law.  See Herndon,
215 S.W.3d at 907.  A trial judge does not have authority to grant a new
trial unless the first proceeding was not in accordance with the law.  Id. 
While a trial court has wide discretion in ruling on a motion for new trial
which sets out a valid legal claim, it should exercise that discretion by
balancing a defendant’s “interest of justice” claim against both the interests
of the public in finality and the harmless-error standards set out in Rule
44.2.  See Tex. R. App. P. 44.2; Herndon, 215 S.W.3d at 908. 
Trial courts do not have the discretion to grant a new trial unless the
defendant demonstrates that his first trial was seriously flawed and that the
flaws adversely affected his substantial rights to a fair trial.  Herndon,
215 S.W.3d at 908.  We have reviewed all of the legal claims for granting the
Harts a new trial that the Harts asserted in the trial court or that were
mentioned by the trial court in its findings of fact and conclusions of law. 
We have concluded that none of these grounds provide a basis for affirming the
trial court’s order.  In this context, the trial court’s statement that a new
trial was in the interest of justice does not provide an independent legal
basis upon which we can affirm the trial court’s order.  See Herndon,
215 S.W.3d at 907–08.  

            Concluding that none of
the proffered legal bases for granting the Harts a new trial have merit, we
sustain the State’s appellate issue.  See id. 
Accordingly, we reverse the trial court’s order granting a new trial, and we
remand with instructions to reinstate the judgments of conviction and the
sentences for both of the Harts.

 

 

 

                                                                                    

                                                                        /s/        Jeffrey
V. Brown

                                                                                    Justice

 

 

Panel consists of Justices Anderson,
Boyce, and Brown.

Publish
— Tex. R. App. P. 47.2(b).

 









[1] 
The vote of nine of the twelve members of the
grand jury was required to indict.  See Tex. Code Crim. Proc. Ann. art. 19.26(b), 20.19 (West 2005).





[2]
There was testimony regarding the existence of
alleged conflicts of interest based on the same law firm representing both of
the Harts, as discussed in section II.A. above.  This testimony did not
specifically address Bond’s representation during the plea process and, as
noted above, we conclude that the evidence was legally insufficient to show
that an actual conflict of interest arose.

 





[3] Bond testified that before she was lead counsel for
the Harts, another lawyer at her firm was the Harts’ lead counsel.  Bond stated
that this lawyer was planning to send letters to clients of Hart Galleries who
were involved in that company’s bankruptcy, but that the State objected and
indicated that sending these letters would constitute witness tampering. 
Because of the State’s objection, the Harts’ counsel decided not to send these
letters.  Bond also testified that her firm did not contact any of the 10-15
people who sent letters saying that the Harts had cheated them.  Arguably, this
testimony from Bond could indicate that her firm never interviewed any of the
complainants.  In any event, there was no evidence rebutting the presumption
that the failure to send these letters and any failure to interview
complainants was reasonable and motivated by sound trial strategy.  As to the
failure to interview, there was no evidence as to counsel’s reasons for this
conduct, and it was not “‘so outrageous that no competent attorney would have
engaged in it.’”  Goodspeed v. State, 187 S.W.3d 390, 392 (Tex. Crim.
App. 2005) (quoting Garcia v. State, 57 S.W.3d 436, 440 (Tex. Crim. App.
2001)).   

 





[4] 
Bond testified that she objected to some of the
items in the PSI reports, though she indicated she did not have enough time to
file all the objections she wanted to assert.  Bond agreed that she could have
filed more objections than she did and that at that juncture she was past
fighting over the facts of the case and was trying to concentrate on the Harts’
acceptance of responsibility.  Bond stated that she could have asked for a
continuance of the punishment hearing, but she decided it was not appropriate
to do so because her strategy was to try to persuade Judge Roll that the Harts
were taking responsibility for their actions.  





[5]
After they pleaded guilty to misappropriation of
fiduciary property and as part of the PSI reports, Jerry and Wynonne each wrote
a letter to Judge Roll.  In their motion for new trial, the Harts also asserted
that these letters show that the Harts did not want to plead guilty and that
their guilty pleas were involuntary.  At the hearing on their motion for new
trial, counsel for Wynonne argued that in their interview for the PSI reports,
the Harts stated that they did not feel like they were guilty of misapplication
of fiduciary property, even though they had pleaded guilty to this offense. 
The trial court did not grant a new trial based on these grounds; we conclude
that these grounds lack merit and do not provide a basis for affirming the
trial court’s order.

 





[6]
The trial court also relied upon the provision
of the Texas Constitution providing for the right to confrontation, as well as
two statutes providing for this right.  See Tex. Const. art. I, § 10; Tex. Code
Crim. Proc. arts. 1.05, 1.25.  However, all of these provisions
guarantee the same right to confrontation contained in the Confrontation Clause
of the Sixth Amendment to the United States Constitution.

 





[7]
The trial court cited article 37.07, presumably
in support of its conclusions that (1) Judge Roll improperly relied upon
hearsay letters and (2) to the extent Judge Roll wanted to consider Judge
Wallace’s advice, Judge Wallace should have testified as a witness at the
punishment hearing under article 37.07.

 





[8] Though not completely clear from the trial court’s
findings, we presume that the trial court found a violation of procedural due
process.