THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHAD MICHAEL MOTE, Defendant-Appellant.

Fourth District No. 4—93—0033

Argued October 13, 1993.—Opinion filed January 27, 1994.

Daniel D. Yuhas and Judith L. Libby, both of State Appellate Defender's Office, of Springfield, for appellant.

John Turner, State's Attorney, of Lincoln (Norbert J. Goetten, Robert J. Biderman, and Linda Susan McClain, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STEIGMANN delivered the opinion of the court:

In August 1992, defendant, Chad Michael Mote, pleaded guilty to one count of aggravated battery in violation of section 12—4(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1991, ch. 38, par. 12—4(a)). In November 1992, the trial court sentenced him to four years in prison and ordered him to pay restitution. Defendant appeals, contending that the court committed reversible error by conducting a private interview with the victim and his wife during the sentencing hearing. We agree and reverse and remand for a new sentencing hearing.

## I. BACKGROUND

At the hearing at which defendant pleaded guilty, defense counsel stated that both he and the prosecutor agreed to recommend four years in prison as an appropriate sentence; neither would request a higher or lower sentence. As part of the plea agreement, the State dismissed an additional count of aggravated battery. However, when defendant spoke during allocution at the sentencing hearing, he requested probation. The trial court then stated that it was considering two sentences. The first consisted of four years in prison and restitution to the victim in the amount of $18,000 for unreimbursed medical expenses and $16,800 for lost wages. The second included 30 months of probation, six months of periodic imprisonment, and the same amount of restitution.

The court then stated the following:

"[I]f the defendant wishes to select the [sentence] which does not include [a] sentence to the Department of Corrections[,] he will need to say that on the record.

If he so indicates[,] I will consider that sentence only if I have the agreement of counsel, and that is both counsel, to meet privately with the victim, the victim's wife, and any of their children they wish to be present with the Court Reporter only present to determine whether they are willing to accept that disposition. Contents of the transcript of that proceeding will be sealed in the court file for purposes of any appeal."

After conferring with counsel, defendant selected the sentencing option that did not include a prison sentence. The court cautioned, however, that it would "consider that [option] only if [defendant] waives any objection to my discussing it privately with the victims." Defense counsel consented to this procedure.

The court then conducted a private discussion with the victim and his wife. The transcript was sealed and not made available to defendant prior to this appeal. Following that meeting, and without disclosing what occurred there, the court sentenced defendant to four years in prison and ordered him to pay restitution.

## II. Analysis

In *People v. Thunberg* (1952), 412 Ill. 565, 107 N.E.2d 843, the supreme court overturned a rape conviction in part because the trial court, before arriving at a verdict in a bench trial, interviewed the victim and her parents outside the presence of defendant and his counsel. The supreme court concluded that these circumstances required a new trial, explaining as follows:

"It has been repeatedly held that the deliberations of the trial judge are strictly limited to the record made before him in open court. [Citations.] Quite recently, in the case of *People v. Rivers*, 410 Ill. 410, at page 416, this court said: 'The defendant in any criminal proceeding has an inherent and constitutional right that all proceedings against him shall be open and notorious, and in his presence, and any inquiry or any acquisition of information or evidence outside of open court and outside of the presence of the defendant is prejudicial error. The defendant cannot be expected to know the scope and extent of any private inquiry made by the court outside of open court and he is not required to inquire into such matters and to resort to extraneous proof to show that

he has been prejudiced. He has a right to rely upon his constitutional guarantee that nothing shall be considered against him except the competent evidence introduced in open court, in his presence, by the witnesses who confront him.'" *Thunberg*, 412 Ill. at 567, 107 N.E.2d at 844.

In a similar vein, this court in *People v. Sumner* (1976), 40 Ill. App. 3d 832, 354 N.E.2d 18, held that the trial court commits reversible error when it holds private conversations with members of the public in order to assist the court in determining the sentence it will impose. After observing that "[p]rivate communications by a judge concerning a case are generally improper" (*Sumner*, 40 Ill. App. 3d at 838, 354 N.E.2d at 23), this court wrote the following:

"The private conversations of the trial judge with members of the public in the instant case were apparently for the purpose of determining whether a sentence of probation or conditional discharge would 'deprecate [the] seriousness' of the offense. An argument can be made that the best way to do this is to talk to others to sample public opinion. Such a procedure, however, affords the defendant no opportunity to challenge the bias of the information obtained. We deem the practice to be improper." *Sumner*, 40 Ill. App. 3d at 839, 354 N.E.2d at 24.

Although we reaffirm this court's holding in *Sumner* that the sentencing court's private consultations with members of the public concerning sentencing constitute error, we note that *Sumner* also mentions that the sentencing court consulted privately with other *judges*, as well as members of the public. (*Sumner*, 40 Ill. App. 3d at 838, 354 N.E.2d at 23.) We take this opportunity to clarify *Sumner* by explaining that it did not prohibit such consultations with fellow judges.

The court in *Sumner* could have addressed the propriety of a judge's conversations with other judges, but declined to do so. Interestingly, however, the court cited section 7.1 of the A.B.A. Standards Relating to Sentencing Alternatives and Procedures (1968). Section 7.1 *recommends* that groups of trial judges from the same court meet together periodically in sentencing councils to discuss the sentences to be later imposed in pending cases. While sentencing is a uniquely personal responsibility for a trial judge, such discussions might well assist the judge and help avoid disparate sentences. Obviously, the choice of sentence must remain the sole responsibility of the judge who will actually impose it.

Canon 3 of the Code of Judicial Conduct specifically authorizes a judge to "consult with court personnel whose function is to aid the judge in carrying out the judge's adjudicative responsibilities or with other judges." (Official Reports Advance Sheet No. 18 (September 1, 1993), R. 63(A)(b) (eff. August 6, 1993).) This authorization (which remains open to interpretation), when taken together with the policy behind section 7.1, suggests that conversations among trial judges about sentencing in pending cases is not forbidden.

In reaching our conclusion that the trial court's private interview constitutes reversible error, we have also considered section 5—4—1 of the Unified Code of Corrections (Unified Code) (Ill. Rev. Stat. 1991, ch. 38, par. 1005—4—1), which sets forth the actions the court shall take at the sentencing hearing. Needless to say, that section contains no authority for the court to conduct private interviews during the sentencing hearing. Because we view the court's action of conducting private interviews at the sentencing hearing as so fundamentally contrary to our legal traditions, we choose to view the absence of such authority as no legislative oversight. Thus, the court's actions violated the statutory scheme for sentencing hearings, as provided in section 5—4—1 of the Unified Code, and constitute reversible error for that reason alone. Accordingly, we need not address defendant's constitutional challenges to the court's actions.

The State argues that the trial court's actions were not improper. Alternatively, the State contends that if they were improper, because they were done with defendant's "permission," he suffered no prejudice. We find the State's arguments without merit.

The fact that the trial court disclosed its intentions prior to the interview, rather than after the fact, makes no difference regarding whether the *ex parte* communication was proper in the first instance. It was not. Further, we reject the State's characterization of defendant's role as that of a willing participant who, without reservation, gave the court "permission" to engage in this improper conduct. The court expressly indicated that it would not even consider the possibility of probation if defendant refused to agree to the private interview. Under these circumstances, no "permission" was given. We add that a defendant's consent, even if freely given, does not (and cannot) authorize a trial court to engage in this improper conduct.

We note the transcript of the interview shows that the trial court initially told the victim and his wife that sentencing was a judicial function which the court was not trying to "pass on" to

them. Yet, by the close of the interview, when the victims questioned the propriety of probation, the court seems clearly to have indicated that unless the victim and his wife consented, the court would not sentence defendant to probation. Defendant argues that these statements also constitute reversible error because despite the court's protestations to the contrary, it did in fact delegate its sentencing function to the victim and his wife. Although we believe defendant's criticism has merit, we need not decide whether the court's remarks constitute reversible error because we have already found reversible error, requiring a new sentencing hearing.

Last, the State argues that defendant has failed to show prejudice because he originally agreed when he pleaded guilty to a four-year sentence. However, the issue of the appropriate sentence in this case is not before us. Had defendant been sentenced to a lesser punishment, the error the trial court committed would still require reversal. The only issue before us is whether the trial court's private interview of the victim and his wife constitutes reversible error, not whether defendant got what he deserved.

In his arguments on appeal, defendant specifically disclaims that the trial court harbored any improper motive. We agree. The record reveals the court's deep concern about the substantial amount of monetary loss suffered by the victims of this brutal crime and defendant's ability to satisfy a restitution award. Nonetheless, however well motivated the court may have been, the procedure it employed was improper.

### III. CONCLUSION

For the reasons stated, we affirm defendant's conviction but vacate his sentence and remand the case to the circuit court of Logan County for resentencing before a different judge.

Affirmed in part; vacated in part and remanded with directions.

KNECHT and LUND, JJ., concur.