The STATE of Texas, Appellant,

v.

Jerry M. HART, Appellee.

The State of Texas, Appellant,

v.

Wynonne T. Hart, Appellee.

Nos. 14–09–00658–CR, 14–09–00659–CR.

Court of Appeals of Texas, Houston (14th Dist.).

April 5, 2011.

Rehearing Overruled July 14, 2011.

Zachary B. Fertita, Houston, for Appellant in No. 14-09-00658-CR.

Ali R. Fazel, Houston, for Appellant in No. 14-09-00659-CR.

Dan McCrory, Houston, for Appellee.

Panel consists of Justices ANDERSON, BOYCE, and BROWN.

## OPINION

JEFFREY V. BROWN, Justice.

This is a State's appeal from an order granting a joint motion for new trial filed by a husband and wife who had pleaded guilty to misapplication of fiduciary property and been sentenced. The trial court found various grounds in the motion for new trial to be meritorious, including some grounds affecting the finding of guilt and some grounds affecting only the assessment of punishment. We conclude that the trial court abused its discretion by granting this motion for new trial. Accordingly, we reverse the trial court's order granting a new trial, and we remand with instructions to reinstate the judg-

ments of conviction and the sentences for both spouses.

# I

## A

Appellees Jerry M. Hart and Wynonne T. Hart were indicted for misapplication of fiduciary property, theft, and money laundering. In exchange for dismissal of the latter two charges, they both pleaded guilty to misapplication of fiduciary property from a long list of complainants, without any recommendation from the State as to punishment. The misappropriated property had a value of more than $3 million. The Harts were eligible for probation and the range of punishment was 5–99 years or confinement for life. The Harts requested probation and the State asked for an unspecified number of years of confinement. After considering a pre-sentence-investigation report ("PSI report") for each defendant, various documents, and the arguments of counsel, Judge Randy Roll assessed punishment for each spouse at fourteen years' confinement.

After sentencing, the Harts obtained information indicating that, before assessing the Harts' punishment, Judge Roll had consulted with Judge Jim Wallace, judge of the 263rd Criminal District Court in Harris County, and that Judge Wallace had given Judge Roll a recommendation as to the assessment of punishment for the Harts. Judge Roll had not disclosed to the Harts that he had received any recommendation from Judge Wallace. The Harts filed a motion to recuse Judge Roll asserting several grounds, including Judge Roll's status as a witness regarding his conversation with Judge Wallace about the Harts' punishment. Judge Roll declined to recuse himself and referred the motion to the presiding judge of the administrative judicial district, Judge Olen Under-

wood. Judge Underwood assigned himself to hear the recusal motion. After hearing the motion, Judge Underwood granted it. He then appointed Judge Vann Culp to hear the Harts' motion for new trial or in the alternative motion for new trial as to punishment. After a two-day evidentiary hearing, Judge Culp granted a new trial. In his findings of fact and conclusions of law, Judge Culp found various grounds asserted by the Harts to be meritorious, including some grounds affecting the finding of guilt and some grounds affecting only the assessment of punishment.

Due to the recusal of Judge Roll, the Harts' cases were transferred to the 180th Criminal District Court of Harris County after Judge Culp granted a new trial. The State appealed the order granting new trial. In these consolidated appeals, the State asserts that none of the grounds are meritorious and that the trial court abused its discretion by granting the Harts a new trial.

## B

Texas courts consistently have held that a trial judge has authority to grant a new trial "in the interest of justice" and that the judge's decision to grant or deny a defendant's motion for new trial is reviewed only for an abuse of discretion. *See State v. Herndon,* 215 S.W.3d 901, 906 (Tex.Crim.App.2007). But that discretion is not unbounded; "justice" means in accordance with the law. *See id.* at 907. A trial judge does not have authority to grant a new trial unless the first proceeding was not in accordance with the law. *Id.* He cannot grant a new trial on mere sympathy, an inarticulate hunch, or simply because he personally believes that the defendant is innocent or "received a raw deal." *Id.* On the other hand, a trial judge is not limited to the mandatory new-trial grounds listed in Rule 21.3. *See* Tex.

R.App. P. 21.3. That list is illustrative, not exclusive, and a trial court may grant a motion for new trial on other legal grounds as well. *See Herndon,* 215 S.W.3d at 907. *Id.* In the federal courts, any error of sufficient magnitude to require reversal on appeal is an adequate ground for granting a new trial. *Id.* Even errors that would not inevitably require reversal on appeal may form the basis for the grant of a new trial if the trial judge concludes that the proceeding has resulted in "a miscarriage of justice." *Id.* Although not all of the grounds for which a trial court may grant a motion for new trial need be listed in a statute or a rule, the trial court does not have discretion to grant a new trial unless the defendant shows that he is entitled to one under the law. *Id.* To grant a new trial for a non-legal or legally invalid reason is an abuse of discretion. *Id.*

■ The test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action; rather, it is a question of whether the trial court acted without reference to any guiding principles or in an arbitrary or unreasonable manner. *See id.; Charles v. State,* 146 S.W.3d 204, 208 (Tex.Crim.App.2004), *superseded in part on other grounds by* Tex.R.App. P. 21.8(b), *as recognized in State v. Herndon,* 215 S.W.3d 901, 905 n. 5 (Tex.Crim.App.2007). We view the evidence in the light most favorable to the trial court's ruling; defer to its credibility determinations; and presume all reasonable factual findings that could have been made in support of the court's ruling. *Charles,* 146 S.W.3d at 208. A trial court abuses its discretion only when no reasonable view of the record could support its ruling. *Id.* The mere fact that a trial court may decide a matter within its discretionary authority differently than an appellate court would decide it does not demonstrate

an abuse of discretion. *Herndon,* 215 S.W.3d at 907–08.

■ While a trial court has wide discretion in ruling on a motion for new trial which sets out a valid legal claim, it should exercise that discretion by balancing a defendant's "interest of justice" claim against the interests of the public in finality and the harmless-error standards set out in Rule 44.2. *See* Tex.R.App. P. 44.2; *Herndon,* 215 S.W.3d at 908. Trial courts should not grant a new trial if the defendant's substantial rights were not affected. *Herndon,* 215 S.W.3d at 908. Otherwise, the phrase "interest of justice" would have no substantive legal content; it would be a mere platitude covering a multitude of unreviewable rulings. *Herndon,* 215 S.W.3d at 908.

■ Though the Court of Criminal Appeals has not set out bright-line rules concerning appellate review of a trial court's granting of a motion for new trial, our high court has concluded that a trial court generally would not abuse its discretion in granting a motion for new trial if the defendant: (1) articulated a valid legal claim in his motion for new trial; (2) produced evidence or pointed to evidence in the trial record that substantiated his legal claim; and (3) showed prejudice to his substantial rights under the standards in Rule 44.2 of the Texas Rules of Appellate Procedure. *Id.* at 909. The defendant need not establish reversible error as a matter of law before the trial court may exercise its discretion in granting a motion for new trial. *Id.* And there is no requirement that, before a trial court may grant a motion for new trial, the moving party must show that he has timely preserved his claim of error for appeal. *Id.* Nevertheless, trial courts lack the discretion to grant a new trial unless the defendant demonstrates that his first trial was seriously flawed and that the flaws adversely

affected his substantial rights to a fair trial. *Id.*

## II

Judge Culp granted a new trial based on many, but not all, of the grounds asserted by the Harts in the trial court. Judge Culp also granted a new trial based on grounds not asserted by the Harts in the trial court. We will address all of the grounds asserted by the Harts in the trial court or cited by Judge Culp as a basis for granting a new trial. These grounds may be grouped in the following categories: (1) alleged conflicts of interest, (2) alleged misconduct by the grand-jury foreman, (3) alleged involuntary guilty pleas, (4) alleged errors relating to extraneous offenses, (5) allegedly improper discussion between Judge Roll and Judge Wallace, and (6) absence of witness testimony at the punishment hearing.

### A. Alleged Conflicts of Interest

 Up until the trial court's assessment of punishment, Jerry and Wynonne were represented by the same law firm. The Harts asserted in their motion for new trial that their representation by the same law firm created two conflicts of interest. One allegedly arose from incriminating statements made by Jerry during the bankruptcy case for the Harts' businesses. The second conflict of interest allegedly arose from the different business roles played by Jerry and Wynonne; according to the Harts, these different roles would have allowed Jerry to argue that he had no knowledge of the accounting procedures of his business and therefore had less culpability than his wife. The trial court concluded that there was an actual conflict of interest based on the joint representation, but that the Harts waived this conflict of interest.

 To obtain a new trial based on their trial counsel's alleged conflict of interest, the Harts had to show that (1) an actual conflict of interest existed; and (2) trial counsel actually acted on behalf of those other interests during the trial. *See Acosta v. State,* 233 S.W.3d 349, 355 (Tex. Crim.App.2007). An actual conflict of interest exists if counsel is required to make a choice between advancing his client's interest in a fair trial or advancing other interests to the detriment of his client's interest. *See id.* To show an actual conflict of interest, the Harts must identify specific instances reflecting a choice made by the Harts' counsel that was harmful to one of them and helpful to the other. *See Gaston v. State,* 136 S.W.3d 315, 318 (Tex. App.-Houston [1st Dist.] 2004, pet. stricken) (en banc).

Stacey Bond, the Harts' lead counsel during their guilty pleas and punishment hearing, testified as follows at the hearing on the motion for new trial:

(1) Bond believed she conducted a thorough investigation of this case before the Harts agreed to plead guilty.

(2) She believed that the Harts were guilty of misapplication of fiduciary property and that the evidence of their guilt was overwhelming.

(3) Bond wanted the Harts to plead guilty to this offense because she thought that "a trial would be devastating for them in terms of punishment."

(4) She did not think that an actual conflict of interest existed during her representation of the Harts.

According to Bond, the potential conflict of interest never became an actual conflict of interest. As finder of fact, the trial court could have disbelieved this testimony. Nonetheless, even ignoring this testimony, no other witness testified regarding specific instances reflecting a choice by the

Harts' counsel that was harmful to one of them and helpful to the other. Though the evidence supported the conclusion that the joint representation of the Harts' created a potential conflict of interest, the evidence was legally insufficient to support a finding that an actual conflict of interest arose. *See James v. State,* 763 S.W.2d 776, 778–82 (Tex.Crim.App.1989); *Gaston,* 136 S.W.3d at 318–22. After reviewing the record under the applicable standard of review, we conclude that the trial court abused its discretion to the extent it granted a new trial based on the conflict-of-interest ground.

*B. Alleged Misconduct by the Grand Jury Foreman*

■ The trial court found that the Harts' convictions were tainted by misconduct committed by the foreman of the grand jury that indicted the Harts. Based on this alleged taint, the trial court granted the Harts a new trial. In this regard, the trial court found as follows:

(1) Robert Ryan served as the foreman of the grand jury that issued the indictments against the Harts.

(2) Ryan was present when a prosecutor presented evidence to the grand jury on these cases.

(3) Ryan considered the evidence presented about the Harts' criminal conduct to be compelling and overwhelming.

(4) The grand jury issued three indictments against each of the Harts.

(5) Robert Ryan called Ben Crump, an acquaintance not serving on the grand jury, to "brag" about indicting the Harts. Ryan told Crump about information Ryan had obtained through the grand-jury proceedings. Ryan told Crump that the Harts

cheated Ryan out of money in a prior business transaction, that the Harts had cheated others, and that they were crooks.

(6) Before presiding as foreman of the Harts' grand jury, Ryan had business dealings with the Harts. Ryan was dissatisfied with his business dealings with the Harts and felt that the Harts had taken advantage of him. Ryan had a negative opinion of the Harts before obtaining any information from the State regarding its investigation of the Harts.

(7) Ryan violated the secrecy rules of the grand jury and violated the part of his oath as a grand juror in which he swore "to present no person from envy, hatred, or malice."

(8) The trial court found it particularly instructive that Judge Jim Wallace, who appointed Ryan to this grand jury, testified that he would not appoint Ryan to any grand jury in the future and that if he were Ryan, he would have recused himself from hearing any information regarding the Hart investigation.

The trial court did not find that any other grand juror engaged in misconduct. The trial court did not find that Ryan told the other grand jurors of his experiences with the Harts or communicated his bias against the Harts to the other grand jurors.[1] The trial court concluded that Ryan, the grand-jury foreman who signed the indictment of the Harts, was biased against the Harts and that the Harts were not indicted by a grand jury composed of all unbiased members. Therefore, the trial court granted the Harts a new trial.

■ It is well-established that defendants cannot challenge the sufficiency of

---

1. The vote of nine of the twelve members of the grand jury was required to indict. *See*

Tex.Code Crim. Proc. Ann. art. 19.26(b), 20.19 (West 2005).

the evidence to support a grand-jury indictment. *See Costello v. United States,* 350 U.S. 359, 362–64, 76 S.Ct. 406, 408–09, 100 L.Ed. 397 (1956); *Brooks v. State,* 642 S.W.2d 791, 795–96 (Tex.Crim.App.1982); *State v. Zoch,* 846 S.W.2d 588, 589 (Tex. App.-Houston [14th Dist.] 1993, no pet.). In rejecting such challenges, courts have stated that an indictment returned by a legally constituted and unbiased grand jury, if valid on its face, is enough to call for trial of the charge on the merits. *See Costello,* 350 U.S. at 362–64, 76 S.Ct. at 408–09; *Brooks,* 642 S.W.2d at 795–96; *Zoch,* 846 S.W.2d at 589. Research has not revealed and the parties have not cited any case addressing what remedy, if any, is available to a defendant when the grand-jury foreman was biased against the defendant. This dearth of case law is not surprising given that grand-jury proceedings are secret. *See* Tex.Code Crim. Proc. art. 20.02 (stating that grand-jury proceedings shall be secret and that disclosure of anything transpiring before a grand jury, absent limited exceptions, is punishable by fine and imprisonment).

The Harts sought and obtained a new trial based on Ryan's alleged bias, but the Harts have not sought dismissal of the indictments on this basis. Indeed, their prior counsel, Bond, testified that the Harts were aware (1) that someone on the grand jury that indicted them was "leaking" information; and (2) of the conversation that Ryan had with Crump, the Harts' longtime friend and an employee at Hart Galleries for 17 years. Bond testified that she could have complained of problems regarding the grand jury but chose not to do so. Even if she had been able to have the indictments set aside, Bond believed that the evidence against the Harts would prompt re-indictment. Bond stated that the Harts had litigated at length with the State on the amounts of the bonds for the

six indictments, and that she would not want to repeat that process.

Presuming for the sake of argument that Ryan engaged in the misconduct found by the trial court, we conclude that such misconduct would not entitle the Harts to a new trial—especially since any new trial would be a trial on the same indictments. The most the Harts might be entitled to as a result of Ryan's alleged misconduct is to have the indictments set aside, and they have not requested this relief. After reviewing the record under the applicable standard of review, we conclude that the trial court abused its discretion to the extent it concluded that the Harts were entitled to a new trial based on any alleged misconduct by Ryan during the grand-jury proceedings.

*C. Alleged Involuntary Pleas Due To Insufficient Evidence*

█ In one ground of their motion, the Harts asserted that their guilty pleas were involuntary because, as a matter of law, they could not be liable for misapplication of fiduciary property; at all relevant times, they argued, they were each acting as "a commercial bailee" exempted from the definition of "fiduciary" under section 32.45 of the Texas Penal Code. *See* Tex. Penal Code § 32.45(a)(1) (excluding from the definition of "fiduciary" "a commercial bailee unless the commercial bailee is a party in a motor-fuel-sales agreement with a distributor or supplier, as those terms are defined by Section 153.001, Tax Code"). We presume for the sake of argument that the Harts' guilty pleas would be involuntary if the Harts fell within this statutory exception.

The word "commercial bailee" is not defined in the Penal Code. However, the ordinary meaning of "bailee" is a "person to whom goods are committed in trust and who has a temporary possession [of the goods] for the purposes of the trust." *See*

*Talamantez v. State,* 790 S.W.2d 33, 36 (Tex.App.-San Antonio 1990, pet. ref'd). The ordinary meaning of a "bailment," the acceptance of goods by a bailee, is "a delivery of personal property by a bailor to a bailee for specific purposes under an express or implied agreement of the parties that when those purposes are accomplished the property will be returned to the bailor, kept until he reclaims it, or disposed of according to the agreement." *See id.* The adjective "commercial" means that the bailee accepts bailments of goods for a fee or as a part of his business. *See id.* However, the property that the Harts were charged with misapplying was the cash proceeds of many consignment sales, and the Harts did not hold this property as a commercial bailee. *See Coleman v. State,* 131 S.W.3d 303, 309 (Tex.App.-Corpus Christi 2004, pet. ref'd); *Talamantez,* 790 S.W.2d at 36. The trial court found that this ground lacked merit, and we agree.

*D. Alleged Involuntary Pleas Due To Allegedly Erroneous Advice of Counsel*

■ The Harts also asserted that their guilty pleas were involuntary because they were based upon the mistaken advice of their counsel, Stacey Bond. The trial court found as follows:

(1) When Judge Randy Roll assessed punishment, he had only been a judge for a few months.

(2) Before he assessed punishment, Judge Roll contacted Judge Wallace and asked his opinion about a proper sentence for the Harts.

(3) Judge Wallace told Judge Roll that he "would start at 15 years."

(4) Judge Roll assessed punishment for each of the Harts at 14 years' confinement.

(5) Bond was familiar with Judge Wallace and knew that he was harsh on people charged with theft.

(6) Bond did not know that Judge Roll would ask Judge Wallace his opinion as to a proper sentence for the Harts.

(7) If Bond had known that Judge Roll would ask Judge Wallace his opinion in this regard, she would not have advised the Harts to proceed with an "open" plea of guilty before Judge Roll.

(8) Judge Roll was influenced by Judge Wallace's recommendation of punishment for the Harts.

The trial court concluded that the Harts' guilty pleas were involuntary because they were based on mistaken or inadequate advice of counsel.

Because the Harts challenged the voluntariness of their guilty pleas made upon the advice of counsel, they had the burden of proving by a preponderance of evidence in the court below that (1) Bond's representation during the plea process fell below an objective standard of reasonableness, and (2) Bond's deficient performance prejudiced the Harts. *See Ex parte Battle,* 817 S.W.2d 81, 83–84 (Tex.Crim.App. 1991). In making this determination, courts indulge a strong presumption that (1) counsel's actions and decisions were reasonably professional and were motivated by sound trial strategy, and (2) that counsel's conduct fell within the wide range of reasonable professional assistance. *See Thompson v. State,* 9 S.W.3d 808, 813 (Tex.Crim.App.1999).

For the purpose of this analysis, we presume that (1) Judge Roll was influenced by Judge Wallace's recommendation of punishment for the Harts; and (2) Judge Roll erred in so doing. But any such error by Judge Roll would not make Bond's advice deficient. Bond testified

that she thoroughly investigated this case before advising the Harts to plead guilty. Bond concluded that there was overwhelming evidence that both of the Harts were guilty of misapplication of fiduciary property, and that the Harts' punishment would be more severe if they went to trial than if they pleaded guilty. Bond stated that it was her belief that the Harts should plead guilty to misapplication of fiduciary property. The trial court did not find that Bond's representation during the plea process fell below an objective standard of reasonableness. Other than Bond's testimony, there was no evidence at the motion for new trial hearing regarding Bond's advice to the Harts as to their decision to plead guilty or her representation of the Harts during the plea process.[2] The evidence at the motion-for-new-trial hearing did not rebut the strong presumption that Bond's representation during the plea process was reasonable and motivated by sound trial strategy.[3]

Nonetheless, the trial court appears to have concluded that Bond's advice was rendered erroneous and deficient because Judge Roll erroneously relied upon the advice of Judge Wallace. Bond did not advise the Harts that, in assessing their punishment, Judge Roll might rely upon

Judge Wallace's advice, and there was no evidence that a reasonably competent lawyer would have done so. Even if Judge Roll erred in consulting with Judge Wallace, this error would not make Bond's performance deficient because she did not predict this scenario or advise the Harts that it might occur. The Harts have not identified an allegedly erroneous statement that Bond made to them regarding their decision to plead guilty, nor have they identified any advice that a reasonably competent lawyer would have given them but that Bond failed to give the Harts.

 The trial court also appears to have concluded that the Harts' pleas were involuntary because they received a copy of the PSI reports about one week before the trial court assessed punishment, and these reports contained statements and letters of which Bond had no prior knowledge. In its findings of fact and conclusions of law, the trial court indicated that this allegedly tardy disclosure caused the Harts to plead guilty based upon inadequate advice of counsel because Bond received the PSI reports only about one week before assessment of punishment.

2. There was testimony regarding the existence of alleged conflicts of interest based on the same law firm representing both of the Harts, as discussed in section II.A. above. This testimony did not specifically address Bond's representation during the plea process and, as noted above, we conclude that the evidence was legally insufficient to show that an actual conflict of interest arose.

3. Bond testified that before she was lead counsel for the Harts, another lawyer at her firm was the Harts' lead counsel. Bond stated that this lawyer was planning to send letters to clients of Hart Galleries who were involved in that company's bankruptcy, but that the State objected and indicated that sending these letters would constitute witness tampering. Because of the State's objection,

the Harts' counsel decided not to send these letters. Bond also testified that her firm did not contact any of the 10–15 people who sent letters saying that the Harts had cheated them. Arguably, this testimony from Bond could indicate that her firm never interviewed any of the complainants. In any event, there was no evidence rebutting the presumption that the failure to send these letters and any failure to interview complainants was reasonable and motivated by sound trial strategy. As to the failure to interview, there was no evidence as to counsel's reasons for this conduct, and it was not " 'so outrageous that no competent attorney would have engaged in it.' " *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex.Crim.App.2005) (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex.Crim.App.2001)).

Again, the trial court did not find that Bond's performance was deficient; instead, the trial court indicated that Bond's advice was necessarily inadequate because of the State's allegedly untimely disclosure.[4] However, article 42.12, section 9, of the Texas Code of Criminal Procedure, which governs presentence investigations, contains no notice requirement; it requires that the defendant or his counsel be permitted to read the PSI report at least 48 hours before sentencing. *See* Tex.Code Crim. Proc. art. 42.12, § 9(d). In addition, the Court of Criminal Appeals has stated generally that the rules of evidence do not apply to the contents of a PSI report. *See Fryer v. State,* 68 S.W.3d 628, 631 (Tex. Crim.App.2002). The trial court erred as a matter of law in concluding that the disclosure of the information in the PSI reports was untimely.

The trial court did not find that Bond's representation during the plea process fell below an objective standard of reasonableness, and the evidence was legally insufficient to support such a finding. After reviewing the record under the applicable standard of review, we conclude that the trial court abused its discretion to the extent it concluded that the Harts' guilty pleas were involuntary because they were based upon mistaken or inadequate advice of counsel.[5] *See Starz v. State,* 309 S.W.3d 110, 122–23 (Tex.App.-Houston [1st Dist.] 2009, pet. ref'd); *Fimberg v. State,* 922 S.W.2d 205, 208 (Tex.App.-Houston [1st Dist.] 1996, pet. ref'd).

*E. Alleged Errors Relating to Extraneous Offenses*

In another part of their motion, the Harts sought a new trial as to punishment based on alleged errors relating to extraneous offenses or bad acts. The trial court sustained this ground, finding as follows:

(1) Bond received a copy of the PSI reports about one week before the punishment hearing. The reports contained information indicating the Harts had committed extraneous offenses. Bond was not aware of these extraneous offenses before she obtained the PSI reports.

(2) Judge Roll reviewed the references to extraneous offenses in the PSI reports and referred to these extraneous offenses during the punishment hearing.

(3) The State did not provide the Harts with adequate notice of the extraneous offenses contained in the PSI reports.

---

4. Bond testified that she objected to some of the items in the PSI reports, though she indicated she did not have enough time to file all the objections she wanted to assert. Bond agreed that she could have filed more objections than she did and that at that juncture she was past fighting over the facts of the case and was trying to concentrate on the Harts' acceptance of responsibility. Bond stated that she could have asked for a continuance of the punishment hearing, but she decided it was not appropriate to do so because her strategy was to try to persuade Judge Roll that the Harts were taking responsibility for their actions.

5. After they pleaded guilty to misappropriation of fiduciary property and as part of the PSI reports, Jerry and Wynonne each wrote a letter to Judge Roll. In their motion for new trial, the Harts also asserted that these letters show that the Harts did not want to plead guilty and that their guilty pleas were involuntary. At the hearing on their motion for new trial, counsel for Wynonne argued that in their interview for the PSI reports, the Harts stated that they did not feel like they were guilty of misapplication of fiduciary property, even though they had pleaded guilty to this offense. The trial court did not grant a new trial based on these grounds; we conclude that these grounds lack merit and do not provide a basis for affirming the trial court's order.

(4) The State did not show beyond a reasonable doubt by evidence that the Harts committed any extraneous offenses or bad acts.

(5) In sentencing the Harts, Judge Roll violated the Harts' constitutional rights by relying upon evidence of extraneous offenses even though the Harts did not have an adequate opportunity to challenge this evidence.

(6) Judge Roll erred in relying upon the extraneous offenses because the State did not prove these offenses beyond a reasonable doubt as required by article 37.07, section 3(a)(1) of the Texas Code of Criminal Procedure.

(7) At the punishment hearing, the Harts were denied their rights under the Sixth Amendment to the United States Constitution; article I, section 10, of the Texas Constitution; and article 37.07 of the Texas Code of Criminal Procedure.

As noted in the previous section, the disclosure of the information in the PSI reports was timely as a matter of law. *See* Tex.Code Crim. Proc. art. 42.12, § 9(d). In addition, to the extent that the trial court concluded that the State failed to give the Harts notice of its intent to introduce evidence of extraneous offenses or bad acts under article 37.07, section 3(g), notice under this section is not required as to references to extraneous offenses and bad acts in the PSI reports. *See* Tex.Code Crim. Proc. art. 37.07, § 3(g) (stating that, "[o]n timely request of the defendant, notice of intent to introduce evidence under this article shall be given in the same manner required by Rule 404(b), Texas Rules of Evidence"); *id.* art. 37.07, § 3(d) (distinguishing between trial court's hearing of evidence introduced by the parties under article 37.07, section 3(a)(1) and the trial court's consideration of the PSI report when the trial court assesses punishment); *Smith v. State,* 227 S.W.3d 753, 763 (Tex.Crim.App.2007) (concluding that under the plain language of article 37.07, section 3(d), the Legislature placed no conditions upon the trial court in considering the contents of a PSI report); *Fryer,* 68 S.W.3d at 631 (stating that the rules of evidence generally do not apply to the contents of a PSI report and that the trial court can consider the contents of a PSI report, even if the contents are hearsay or would not have been admissible if offered into evidence at the punishment hearing).

To the extent the trial court concluded that the State was required to prove beyond a reasonable doubt that the Harts committed all extraneous offenses or bad acts referred to in the PSI reports, the trial court erred as a matter of law. *See Smith,* 227 S.W.3d at 763 (holding that article 37.07, section 3(a)(1) does not prohibit a trial court, in assessing punishment, from considering extraneous offenses or bad acts contained in the PSI report, even there is no proof beyond a reasonable doubt that the defendant committed these extraneous offenses or bad acts). To the extent the trial court concluded that the alleged lack of notice and the Harts' inability to confront persons responsible for statements in the PSI reports regarding extraneous offenses violated the Confrontation Clause, the trial court erred as a matter of law. *See Stringer v. State,* 309 S.W.3d 42, 48 (Tex.Crim.App.2010) (holding that defendant's Confrontation Clause rights were not violated by extraneous-offense information in the PSI report because the Confrontation Clause does not apply to the contents of a PSI report in a non-capital case in which the defendant has elected to have the trial court assess punishment).

Finally, Bond testified that (1) she had a copy of the PSI reports for approximately a week before the punishment hearing; (2)

she objected to some items in the PSI reports; and (3) she could have objected to other items in the PSI reports or moved for a continuance of the punishment hearing but did not do so for reasons of strategy. This testimony was uncontroverted. We conclude that there is legally insufficient evidence to support the trial court's finding that the Harts did not have an adequate opportunity to challenge any references to extraneous offenses in the PSI reports. To the extent the trial court concluded that Judge Roll violated the Harts' due-process or other constitutional rights by relying upon references to extraneous offenses in the PSI reports that the Harts did not have an adequate opportunity to challenge, we conclude that the trial court abused its discretion.

After reviewing the record under the applicable standard of review, we conclude that the trial court abused its discretion to the extent it concluded that the Harts were entitled to a new trial or a new trial on punishment based on the foregoing alleged errors relating to extraneous offenses and the PSI reports. *See* Tex.Code Crim. Proc. art. 42.12, § 9(d); *id.* art. 37.07, § 3; *Stringer*, 309 S.W.3d at 48; *Smith*, 227 S.W.3d at 763; *Fryer*, 68 S.W.3d at 631.

### F. Allegedly Improper Discussion Between Judge Roll and Judge Wallace

The Harts also sought a new trial based on Judge Roll's conversation with Judge Wallace. The trial court sustained this ground, finding as follows:

(1) Before he assessed punishment, Judge Roll contacted Judge Wallace and asked his opinion about a proper sentence for the Harts.

(2) Judge Wallace told Judge Roll that he "would start at 15 years." Judge Wallace had no access to the PSI reports or any evidence in this case.

Judge Wallace was not named or sworn as a witness in this case.

(3) Judge Roll was influenced by Judge Wallace's recommendation of punishment for the Harts. Judge Roll's assessment of punishment at 14 years' confinement for each of the Harts was just one year less than the punishment recommended by Judge Wallace.

(4) Punishment for the Harts was based on hearsay letters in the PSI reports and the recommendation of Judge Wallace, an unidentified, unsworn witness, whom the Harts' counsel had no opportunity to cross-examine.

(5) At the punishment hearing, the Harts were denied their rights under the Sixth and Fourteenth Amendments to the United States Constitution, article I, section 10, of the Texas Constitution, and articles 1.05, 1.25, and 37.07 of the Texas Code of Criminal Procedure.

#### 1. Alleged Failure to Consider Full Range of Punishment

Though the trial court may have found a due-process violation based upon Judge Roll's conversation with Judge Wallace outside the presence of the parties and counsel, the trial court did not find a due-process violation based on an alleged failure by Judge Roll to consider the entire range of punishment. Nonetheless, because the Harts assert that Judge Roll did not consider the full range of punishment, we examine this issue.

Due process requires trial judges to be neutral and detached in assessing punishment. *See Brumit v. State*, 206 S.W.3d 639, 645 (Tex.Crim.App.2006). A trial court denies a defendant due process when it arbitrarily refuses to consider the entire range of punishment or imposes a predetermined punishment. *See id.;*

*McClenan v. State,* 661 S.W.2d 108, 110 (Tex.Crim.App.1983); *Jaenicke v. State,* 109 S.W.3d 793, 796 (Tex.App.-Houston [1st Dist.] 2003, pet. ref'd). Absent a clear showing to the contrary, we presume that Judge Roll was neutral and detached in assessing the Harts' punishment and that Judge Roll considered the full range of punishment. *See Brumit,* 206 S.W.3d at 645; *Jaenicke,* 109 S.W.3d at 796.

We presume for the sake of argument that, as argued by the Harts, Judge Wallace's testimony would support a finding that Judge Wallace told Judge Roll to start at 15 years' confinement and then increase the number of years, if a longer sentence would be appropriate based upon the circumstances of the case, without mentioning the possibility of a punishment less than 15 years' confinement. If Judge Roll followed this advice, then he would not consider the possibility of probation or of confinement for 5–14 years. The issue then is whether the evidence was sufficient to rebut the presumption that Judge Roll considered the full range of punishment.

Significantly, the Harts could have but did not call Judge Roll as a witness at the hearing on their motion for new trial. Therefore, our record lacks any testimony by Judge Roll regarding his conversation with Judge Wallace or whether Judge Roll considered the full range of punishment. *See Ex parte Brown,* 158 S.W.3d 449, 453–56 (Tex.Crim.App.2005) (considering trial judge's testimony at habeas-corpus hearing in determining whether judge violated due process by refusing to consider the full range of punishment).

At the punishment hearing, Judge Roll stated that he had spent about 20 hours reviewing the PSI reports and had read all of the more than 180 letters that people had sent regarding the assessment of the Harts' punishment. Judge Roll said that this was the most difficult case he had had

since becoming a judge earlier in the year. Judge Roll read Jerry's 11–page, single-spaced letter to Judge Roll, as well as Wynonne's 8–page, single-spaced letter. Judge Roll stated that these letters were self-serving and indignant, and that the Harts did not take any responsibility for their actions in these letters. Judge Roll stated that he saw arrogance rather than contrition. Judge Roll assessed punishment for each of the Harts at 14 years and stated that their punishment would have been much higher than that had they not made statements at the punishment hearing taking some responsibility for their actions. Judge Roll's statements at the punishment hearing reflect that he considered the full range of punishment and assessed punishment based upon an independent assessment of the facts and circumstances shown by the PSI reports, the evidence introduced at the punishment hearing, and the Harts' statements to the trial court at the punishment hearing. Judge Roll's statements do not reflect that he imposed a punishment that he determined before considering the evidence, PSI reports, and the parties' arguments.

Judge Wallace testified that he had not spoken to Judge Roll in 10 years when Judge Roll called to ask his recommendation regarding the Harts' sentencing. There was no evidence that Judge Wallace talked to Judge Roll after the Harts' punishment hearing or that Judge Wallace had any basis for knowing how Judge Roll made his determination regarding assessment of punishment. Judge Wallace stated that he knew Judge Roll would not simply follow Judge Wallace's advice and that Judge Roll's assessment of punishment at one year less than where Judge Wallace said he would start showed that Judge Roll made his own decision regarding punishment.

There is no evidence in the record that reasonably could be found to rebut the presumption that (1) Judge Roll was neutral and detached in assessing punishment, (2) Judge Roll considered the full range of punishment, and (3) Judge Roll made his own independent judgment regarding punishment, rather than assessing a predetermined punishment based on Judge Wallace's recommendation. *See Gaal v. State*, 332 S.W.3d 448, 458 (Tex.Crim.App.2011) ("The trial judge never intimated, nor is there anything in the record that would logically support a finding, that he would not fairly consider the entire range of punishment"); *Brumit*, 206 S.W.3d at 645; *McClenan*, 661 S.W.2d at 110; *Jaenicke*, 109 S.W.3d at 796. Because there is no record evidence that reasonably would support a finding that Judge Roll failed to consider the full range of punishment, this argument does not provide a basis for affirming the trial court's order.

### 2. *Judge Roll's consultation with Judge Wallace*

The trial court granted a new trial based upon Judge Roll's conversation with Judge Wallace outside the presence of the parties and counsel, and with no notice to the parties that the conversation occurred. The trial court concluded that Judge Wallace was an unsworn witness on the punishment issue whom the Harts had no opportunity to cross-examine. The trial court concluded that this conversation with

Judge Wallace violated the Harts' rights under the Confrontation Clause,[6] article 37.07,[7] and their procedural due-process rights.[8] The State responds that Judge Roll's conversation with Judge Wallace was proper and cannot have violated the Harts' rights because such conversations are excluded from the prohibition against ex parte communications in the Texas Code of Judicial Conduct. *See* Tex.Code of Judicial Conduct, Canon 3(B)(8) (stating that a judge shall not initiate, permit, or consider ex parte communications but that this subsection does not prohibit "consulting with other judges"); *see also* ABA Model Code of Judicial Conduct, R. 2.9(A)(3) (2007) (stating "a judge may consult ... with other judges, provided the judge makes reasonable efforts to avoid receiving factual information that is not part of the record, and does not abrogate the responsibility personally to decide the matter").

Under the Confrontation Clause, the Harts have a constitutional right to be physically present in the courtroom at every stage of the trial, to be confronted with the witnesses against them, and to have an opportunity to cross-examine those witnesses. *See Garcia v. State*, 149 S.W.3d 135, 140 (Tex.Crim.App.2004); *Baltierra v. State*, 586 S.W.2d 553, 556 (Tex.Crim.App. 1979). However, if, as provided in the Code of Judicial Conduct, a consultation between two judges is not an ex parte communication, then the parties and their

---

6. The trial court also relied upon the provision of the Texas Constitution providing for the right to confrontation, as well as two statutes providing for this right. *See* Tex. Const. art. I, § 10; Tex.Code Crim. Proc. arts. 1.05, 1.25. However, all of these provisions guarantee the same right to confrontation contained in the Confrontation Clause of the Sixth Amendment to the United States Constitution.

7. The trial court cited article 37.07, presumably in support of its conclusions that (1) Judge Roll improperly relied upon hearsay letters and (2) to the extent Judge Roll wanted to consider Judge Wallace's advice, Judge Wallace should have testified as a witness at the punishment hearing under article 37.07.

8. Though not completely clear from the trial court's findings, we presume that the trial court found a violation of procedural due process.

counsel would not need to be present during such consultations. The parties have not cited and research has not revealed any Texas precedent on this issue.

We first examine what the record shows about Judge Roll's consultation with Judge Wallace. Though Judge Roll asked Judge Wallace for his recommendation regarding assessment of the Harts' punishment, Judge Roll provided Judge Wallace with no facts about the case. Judge Wallace was the judge of another district court in Harris County. Judge Wallace had not previously been recused or disqualified in the Harts' cases and did not serve on a court that might exercise appellate jurisdiction over a judgment rendered by Judge Roll in the Harts' cases. As discussed above, the record reflects that Judge Roll considered the full range of punishment and made his own independent judgment.

Under these circumstances, the parties have not cited and research has not revealed any cases holding that consulting with another judge must be done before the parties as part of the trial proceedings or that the other judge's advice is witness testimony. Several cases from other jurisdictions support the proposition that the consultation of another judge regarding an aspect of a pending case does not constitute an ex parte communication, testimony triggering rights under the Confrontation Clause, or a part of the trial that must occur in the courtroom with the parties and their counsel present. *See People v. Hernandez*, 160 Cal.App.3d 725, 742–49, 206 Cal.Rptr. 843 (Cal.Ct.App.1984) (concluding there was no due-process violation when trial judge consulted another trial judge by telephone and without presence of the parties about an issue relevant to assessment of punishment in a pending case in which the first judge was to assess punishment); *People v. Mote*, 255 Ill. App.3d 757, 194 Ill.Dec. 611, 627 N.E.2d 1253, 1255 (1994) (stating that, though a trial judge's consultation with members of the public or with the complainant outside the presence of the prosecutor, defendant, and defendant's counsel violate a defendant's rights to confrontation, discussions between judges regarding assessment of punishment in pending cases is permitted); *Cannon v. State*, 866 N.E.2d 770, 773 (Ind. 2007) (stating that, as permitted by the Indiana Code of Judicial Conduct, a judge may discuss issues touching upon a specific case with another judge, but the judge must exercise independent judgment); *McKenzie v. State*, 583 N.W.2d 744, 747–48 (Minn.1998) (holding that judges presiding over related criminal cases could consult with each other in private to discuss potential issues related to these cases as long as the judges did not predetermine a ruling before hearing and considering the parties' arguments); *In re Conservatorship of Bardwell*, 849 So.2d 1240, 1246 & n. 6 (Miss.2003) (endorsing trial court's consultation with another trial judge with thirty years of judicial experience about an issue in a pending case).

Though the trial court concluded that, by giving his recommendation, Judge Wallace became a witness in the case, the Harts have not asserted that Judge Wallace gave testimony. We conclude that no reasonable view of the record supports a finding that Judge Wallace testified, was a witness, or that his conversation with Judge Roll was part of the trial proceedings; thus, the Harts' rights under the Confrontation Clause and article 37.07 were not violated as a matter of law. *See Mote*, 627 N.E.2d at 1255; *McKenzie*, 583 N.W.2d at 747–48. In addition, because this consultation does not constitute an ex parte communication under the Texas Code of Judicial Conduct, this consultation did not have to occur in the presence of the parties or their counsel, and it did not

violate the Hart's rights to procedural due process as a matter of law. *See* Tex.Code of Judicial Conduct, Canon 3(B)(8); *Hernandez*, 160 Cal.App.3d at 742–49.

### 3. *Hearsay Letters in the PSI Reports*

■ The trial court also granted a new trial based upon Judge Roll's alleged error in determining punishment based upon letters in the PSI reports that were hearsay. However, the Court of Criminal Appeals has held that the PSI statute authorizes trial courts to consider information in the PSI report that is hearsay. *See Fryer*, 68 S.W.3d at 631; *Brown v. State*, 478 S.W.2d 550, 551 (Tex.Crim.App.1972). To the extent the trial court concluded that Judge Roll erred by considering letters in the PSI reports that were hearsay, the trial court erred as a matter of law. *See Fryer*, 68 S.W.3d at 631; *Brown*, 478 S.W.2d at 551.

After reviewing the record under the applicable standard of review, we conclude that the trial court abused its discretion to the extent it concluded that the Harts were entitled to a new trial or a new trial on punishment based on the foregoing alleged errors relating to hearsay and Judge Roll's consultation with Judge Wallace.

### G. *Absence of Witness Testimony at the Punishment Hearing*

■ The trial court also granted a new trial based upon a finding that no legally authorized punishment hearing occurred because no witnesses testified in open court at the punishment hearing as allegedly required by article 37.07, section 3(d). *See* Tex.Code Crim. Proc. art. 37.07, § 3(d). The trial court's findings indicate that this ground was not raised by the Harts, and the record reflects that the Harts did not assert this argument in their motion for new trial, their supplement thereto, or in their arguments at the hearing. Therefore, to the extent the trial court granted new trial based upon this ground, the trial court erred as a matter of law. *See Clarke v. State*, 270 S.W.3d 573, 579–80 (Tex.Crim.App.2008); *State v. Provost*, 205 S.W.3d 561, 566 (Tex.App.-Houston [14th Dist.] 2006, no pet.).

■ In any event, the relevant portion of article 37.07, section 3(d) simply refers to the hearing of evidence under article 37.07, section 3(a)(1). *See* Tex.Code Crim. Proc. art. 37.07, § 3(d). Under section 3(a)(1), "evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing." *See id.* art. 37.07, § 3(a)(1). Under the unambiguous language of these statutes, there is no requirement that evidence in the form of live testimony be given at a punishment hearing. *See id.* art. 37.07, § 3. The parties had an opportunity to offer evidence, and the trial court admitted documentary evidence at the punishment hearing. The parties could have offered sworn testimony in open court at the punishment hearing, but they chose not to. Judge Roll conducted a legally authorized punishment hearing as to both of the Harts.

### H. *Interest of Justice*

The trial court also stated that, based on the totality of the circumstances, it was granting a new trial in the interest of justice. On appeal, the Harts argue in part that this court can affirm the trial court's order on this basis alone. A trial judge has discretion to grant or deny a motion for new trial "in the interest of justice," but "justice" means in accordance with the law. *See Herndon*, 215 S.W.3d at 907. A trial judge does not have authority to grant a new trial unless the first proceeding was not in accordance with the law. *Id.* While a trial court has wide discretion in ruling on a motion for new trial which sets out a valid legal claim, it

should exercise that discretion by balancing a defendant's "interest of justice" claim against both the interests of the public in finality and the harmless-error standards set out in Rule 44.2. *See* Tex.R.App. P. 44.2; *Herndon,* 215 S.W.3d at 908. Trial courts do not have the discretion to grant a new trial unless the defendant demonstrates that his first trial was seriously flawed and that the flaws adversely affected his substantial rights to a fair trial. *Herndon,* 215 S.W.3d at 908. We have reviewed all of the legal claims for granting the Harts a new trial that the Harts asserted in the trial court or that were mentioned by the trial court in its findings of fact and conclusions of law. We have concluded that none of these grounds provide a basis for affirming the trial court's order. In this context, the trial court's statement that a new trial was in the interest of justice does not provide an independent legal basis upon which we can affirm the trial court's order. *See Herndon,* 215 S.W.3d at 907–08.

Concluding that none of the proffered legal bases for granting the Harts a new trial have merit, we sustain the State's appellate issue. *See id.* Accordingly, we reverse the trial court's order granting a new trial, and we remand with instructions to reinstate the judgments of conviction and the sentences for both of the Harts.