**Affirmed and Memorandum Opinion filed July 18, 2023.**



In The

# Fourteenth Court of Appeals

NO. 14-22-00286-CR
NO. 14-22-00287-CR

**BRADY JOSEPH RAY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 339th District Court
Harris County, Texas
Trial Court Cause Nos. 1736075 & 1736077**

## MEMORANDUM OPINION

Appellant challenges his two convictions for aggravated assault against a public servant, arguing in a single issue that the trial court deprived him of due process by refusing to consider the entire range of punishment. For the reasons given below, we overrule this issue and affirm the trial court's judgments.

## BACKGROUND

After a recent divorce, appellant contacted his ex-wife and told her that he was inside of her house. The ex-wife called the police, and two officers responded to the scene, each at a separate time.

The first officer found appellant sitting in his ex-wife's garage. He had been drinking, and there was a gun at his side. The officer unholstered his own weapon and told appellant not to reach for the gun. Appellant raised his hands, appearing to comply. The officer then holstered his weapon and said that he was going to seize appellant's gun for his own safety. Appellant opposed that idea, and he started to move towards the officer. The officer tried to deescalate the situation—he reached for his Taser instead of his weapon—but when appellant reached for his own gun, the officer fired the Taser, which failed to make contact with appellant.

The officer turned and ran for cover. As he was running away, appellant fired multiple shots at the officer. One of the shots hit the officer in his left buttock. The bullet exited through the officer's right groin. The officer radioed that he had been shot. Then the second officer arrived on scene. Appellant and the second officer exchanged gunfire, but neither man was hit during the exchange.

The second officer took the first officer to the hospital, while appellant escaped through the backyard. Appellant was apprehended the next day, and eventually charged with two counts of aggravated assault (one for each officer).

Appellant pleaded not guilty to each count, but a jury found him guilty on both counts. Appellant then elected for the trial court to assess his punishment.

Three witnesses testified during the punishment hearing. The first witness was the injured officer, who testified at length about his physical and psychological trauma. He said that when he was shot, he was afraid that his daughters would grow

up without a father. He was also worried that one of his last interactions with his wife had been an argument that had not been rectified.

The officer testified that the bullet grazed his rectum and damaged his bladder and urethra. A surgery was performed to repair the damage, but the stress on the officer's body led to a bleeding stomach ulcer, which required even more surgery.

Because of the damage to the rectum, surgeons had to disconnect the colon and install a colostomy bag. Though he later received a colostomy reversal, the colostomy bag caused the officer mental distress. When the colostomy bag was attached, he could not wear suits or engage in certain activities.

The officer has also had lasting damage to his bladder control. Since returning to work, he has urinated on himself, which he described as embarrassing and humiliating. He also mentioned that he still experiences physical pain, and that his scar tissue still affects him.

The second witness was the officer's wife. She testified about the emotional whirlwind of learning that her husband had been shot and the struggles they have had since his discharge from the hospital.

The third witness was appellant's mother, who testified on behalf of the defense. She testified that appellant suffers from bipolar disorder and that his actions on the day of the offense were very uncharacteristic of his typical behavior. She testified that appellant has always respected officers, and that his typical response when angry has been to become anxious and walk away. She suggested that appellant's mental state had deteriorated after his divorce. She also suggested that appellant has struggled because his father died and because he was living in a car.

After both sides rested, the trial judge requested to hear more testimony from the injured officer, out of a concern that she needed "to make sure [she] check[ed]

all the boxes." The officer returned to the witness stand and testified that he hoped to receive mental health treatment for the sake of himself and his entire family.

The parties then presented their closing statements. The defense recognized that the normal range of punishment for aggravated assault was a term of imprisonment between two and twenty years, but that the range was expanded in this case to between five and ninety-nine years or life because the assaults were committed against public servants. *See* Tex. Penal Code § 22.02(b)(2) (elevating the offense from a second-degree felony to a first-degree felony when the assault is committed against a public servant); Tex. Penal Code § 12.32 (providing the range of punishment for a first-degree felony). The defense did not suggest that appellant was deserving of only five years' imprisonment, but the defense implored the trial judge to begin her assessment at that lower end of the spectrum because appellant did not have a criminal history. The defense also rationalized that appellant was a broken man after the divorce and he simply made a terrible decision.

The prosecution responded that if appellant had killed the officer, then the offense would be capital murder and that appellant would be facing a minimum punishment of life without parole. Emphasizing that appellant has never admitted any fault or expressed any remorse, the prosecution encouraged the judge to assess her punishment at the higher end of the spectrum, with life imprisonment.

The trial judge began her pronouncement by stating that "this has probably been one of the hardest ones for [her]." She remarked that the officer had commendably put his weapon away and opted for his Taser instead, and she lauded the officer for stating that he had wanted everyone to "make it home" that day. She added that this officer was the type of officer that she wanted in her community.

The judge then made the following comments, which are the focus of this appeal:

4

I was real clear before we started the trial when I brought everybody in that I wasn't considering anything under thirty.

And I said, you know, if the evidence shows that this is what happened and this officer was turned around—I didn't know the de-escalation part at first. I said—I looked [appellant] in the face and I said, If it's proven to me at trial that—I understand the State's offer was thirty on the case. I said, If they prove to me at trial this officer turned and he was running away, I don't think thirty is appropriate; and I wouldn't give that offer.

I don't think you pay a trial tax for going to trial, but I did say I didn't think that offer was appropriate if what they said they were going to prove was true. At this time the Court is going to sentence you to forty years TDC. Good luck to you, sir.

Appellant did not object to these comments, but no such objection is required to raise a complaint on appeal that the judge failed to consider the entire range of punishment. *See Grado v. State*, 445 S.W.3d 736, 739–41 (Tex. Crim. App. 2014). Appellant brings that complaint now.

## ANALYSIS

Due process requires a trial judge to be neutral and detached when assessing punishment. *See State v. Hart*, 342 S.W.3d 659, 672 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd). A trial judge improperly denies a defendant due process when she arbitrarily refuses to consider the entire range of punishment or when she imposes a predetermined punishment. *Id.*

Absent a clear showing to the contrary, we presume that a trial judge was neutral and detached when she assesses a defendant's punishment. *See Brumit v. State*, 206 S.W.3d 639, 645 (Tex. Crim. App. 2006). As the party challenging the trial judge's assessment here, appellant had the burden of rebutting that presumption. *Id.*

Appellant believes that he rebutted that presumption because, when the judge pronounced her sentence, she indicated that she had earlier stated that she would not consider any term of imprisonment under thirty years. Those earlier statements must have occurred off the record, because they do not appear in any of our transcripts. The only statements that were recorded were the judge's final statements in which she pronounced appellant's sentence. As explained below, those final statements do not establish that the trial judge *arbitrarily* refused to consider the entire range of punishment.

A trial judge's refusal to consider a permissible range of punishment is arbitrary if the refusal has no basis in any evidence. *See, e.g.*, *Norton v. State*, 755 S.W.2d 522, 523 (Tex. App.—Houston [1st Dist.] 1988) (the judge arbitrarily refused to consider the entire range of punishment when—before the guilt phase had even begun—the judge stated that he would not accept a plea bargain of deferred adjudication, and he further stated that "if the jury gives her probation, I'll give her jail time"), *pet. ref'd*, 771 S.W.2d 560 (Tex. Crim. App. 1989) (per curiam). On the other hand, a trial judge's refusal to consider a permissible range of punishment is not arbitrary if the refusal is based on the proof of aggravating facts, or on the absence of mitigating facts. *See, e.g.*, *McClenan v. State*, 661 S.W.2d 108, 110 (Tex. Crim. App. 1983) (concluding that the judge did not demonstrate bias when he stated that he could not consider probation if certain factors were shown), *overruled on other grounds by De Leon v. Aguilar*, 127 S.W.3d 1 (Tex. Crim. App. 2004) (orig. proceeding); *Roman v. State*, 145 S.W.3d 316, 319 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd) ("However, refusal to consider the entire range of punishment would not be arbitrary if certain facts were proved, and other mitigating facts not proved.").

Here, the trial judge did not state that she would arbitrarily refuse to consider a term of thirty years' imprisonment or less. Rather, she stated that she did not believe that a term of thirty years' imprisonment would be appropriate if the prosecution proved that appellant shot at the officer when the officer's back was turned and the officer was running away. Because the judge conditioned her statement on the proof of aggravating facts—and because those facts were actually proven at trial, both during the guilt phase and during the punishment phase—we conclude that the judge's statements do not rebut the presumption that she was neutral and detached.

Appellant argues that we should reach the opposite conclusion, citing three separate cases. But none of his arguments is persuasive.

Appellant cites first to *Jefferson v. State*, 803 S.W.2d 470 (Tex. App.—Dallas 1991, pet. ref'd). In that case, the defendant pleaded guilty and the trial judge placed him on deferred adjudication. *Id.* at 470. The judge further warned the defendant that if he violated any terms of his community supervision, then the judge would assess the maximum punishment prescribed by law. *Id.* The judge also required the defendant's community supervision officer to make a note in the defendant's records about this warned sentence. *Id.* at 471. Later, when the defendant violated the terms of his community supervision by failing to pay certain fees, the judge carried through with his warning and assessed the maximum punishment. *Id.* at 470. The court of appeals reversed and held that the judge had "assessed a promised punishment, apparently to maintain his credibility." *Id.* at 472. The court of appeals also determined that the judge's approach violated due process because it effectively excluded evidence relevant to punishment. *Id.*

Appellant's case, by contrast, is not like *Jefferson*. The judge here did not "promise" to assess any sentence—much less the maximum sentence. Instead, the

judge only indicated that the lower range of punishment would not be appropriate if certain aggravating facts were proved. Also, the judge here clearly considered all of the evidence. She even requested to reopen the evidence in order to "check all of the boxes." And she rejected the prosecution's proposed punishment of life imprisonment. Because of these differences, we cannot say that the judge imposed a predetermined sentence as in *Jefferson*.

Appellant cites next to *Cabrera v. State*, 513 S.W.3d 35 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd). In that case, the judge had a pretrial discussion with the defendant and said that he would be willing to consider a punishment of only thirty days in jail if the defendant waived his right to a jury trial. *Id.* at 37. When the defendant responded that he still intended to exercise his right to a jury trial, and that he intended to have the court assess his punishment in the event he were found guilty, the judge responded, "I hope you're not under any illusion you are going to get 30 days after trial, are you?" *Id.* Based on that statement, this court concluded that the judge had deprived the defendant of due process. *Id.* at 41. We explained that the judge's statement "clearly indicates that the court, without any evidence before it, had arbitrarily dismissed a portion of the permissible range of punishment." *Id.* at 39. We also determined that the statement "was not conditioned on proof of specific facts, but on whether [the defendant] chose to exercise his right to a jury trial." *Id.* at 40.

Appellant's case is not similar to *Cabrera*. The judge here conditioned her statements on the proof of aggravating facts, unlike the judge in *Cabrera*. And the judge here specifically added that her assessment of punishment was not "a trial tax."

Appellant cites last to *Brumit v. State*, 206 S.W.3d 639 (Tex. Crim. App. 2006). The defendant in that case pleaded guilty to aggravated sexual assault of a child, without an agreed recommendation as to punishment. *Id.* at 640. After hearing

8

"extensive evidence of repeated sexual assaults," the judge assessed the defendant's punishment at life imprisonment. *Id.* The judge explained that he believed the defendant was "the worst kind of predator." *Id.* The judge also stated that after his time as a prosecutor, he believed that "anybody that ever harmed a child should be put to death." *Id.* The Court of Criminal Appeals held that the judge's comments did not reflect bias, partiality, or an arbitrary refusal to consider the entire range of punishment. *Id.* at 645. And in reaching that holding, the Court observed that the judge had heard an extensive amount of evidence, and that the judge had admonished the defendant about the full range of punishment. *Id.*

Appellant attempts to draw a contrast to *Brumit* by suggesting that the judge in his case did not hear any new evidence during the punishment phase. And based on that contrast, appellant believes that the judge here demonstrated bias. We disagree. The judge here presided over both the guilt phase of trial and the punishment phase of trial. Some of the testimony from the guilt phase was repeated during the punishment phase, but other testimony during the punishment phase was new. For example, the judge heard from the officer's wife and from appellant's mother, neither of whom testified during the guilt phase of trial. And as stated earlier, the judge also requested to reopen the evidence during the punishment phase of trial to consider an unaddressed matter from the officer. The record plainly shows that the judge considered all of the evidence.

Based on the foregoing, we conclude that appellant has failed to rebut the presumption that the trial judge was neutral and detached when assessing his punishment.

## CONCLUSION

The trial court's judgments are affirmed.

/s/ Tracy Christopher
Chief Justice

Panel consists of Chief Justice Christopher and Justices Zimmerer and Poissant.

Do Not Publish — Tex. R. App. P. 47.2(b).