**AFFIRM; and Opinion Filed April 24, 2019.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-00316-CR

### STEVEN EARL WILLIAMS, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the 283rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F17-76867-T**

## MEMORANDUM OPINION

Before Justices Brown, Bridges, and Nowell
Opinion by Justice Brown

Appellant Steven Earl Williams, Jr. appeals his conviction and seven-year sentence for aggravated robbery. In two issues, appellant contends he received ineffective assistance of counsel and his sentence was arbitrary in violation of his due process rights. For the following reasons, we affirm the trial court's judgment.

### BACKGROUND

Appellant entered an open plea of guilty to the aggravated robbery charge, and the trial court heard evidence on the plea and punishment. Appellant testified he was twenty-six years old. He had worked since dropping out of school in the ninth grade and, at the time of his arrest, had a full-time job with benefits. He was living at his uncle's house.

Early the morning of the offense, appellant's friend Reco Monroe and another man appellant knew as Big Bro came to the door. Monroe and Big Bro were dressed in black, and Monroe wore gloves. Monroe, who appeared to be under the influence of drugs, asked appellant if he wanted to "make a quick dollar," which appellant understood to mean rob someone. Appellant agreed. Big Bro drove them to a convenience store, and, on the way, they discussed what they were going to do. Appellant testified he did not know Big Bro had a gun and thought they were just doing a "snatch and run."

Big Bro entered the store first. Appellant entered next and jumped over the counter, took money from the register and the store owner's gun, and then ran back to the car. The gun fell out of his pants as he ran, and either Monroe or Big Bro picked it up. Appellant gave all the money from the robbery to Monroe and Big Bro. Appellant testified he did not know who hit the store owner or took the store owner's and an employee's wallets during the robbery.

Big Bro and Monroe drove appellant home; he was there by 6:30 a.m. and went to work shortly thereafter. Later that day, appellant's mother and father saw him on a crime bulletin. His mother picked him up from work and drove him to the police station, where he told detectives everything that happened. When asked why he did it, appellant said he was "[j]ust hanging around" and "trying to fit in and look cool, I guess." Appellant characterized the offense as a "dumb mistake," apologized, and asked the trial court to place him on community supervision.

Previously, appellant had served deferred adjudication community supervision for a 2009 misdemeanor marijuana possession. At the time of his arrest for the aggravated robbery, he was serving an extended term of community supervision for another misdemeanor. Appellant had tested positive for marijuana one month after that term was extended and subsequently failed to report to his community supervision officer. The officer also noted some disturbing "stuff" on

appellant's phone, which appellant described as "marijuana and . . . guns and stuff" that he was sharing "off [his] Facebook."

During the hearing, the trial court asked several questions about appellant's community supervision and the aggravated robbery. Among other things, the trial court expressed disbelief that appellant had not known one of the men had a gun during the robbery in light of the fact that they had discussed their plans on the way to the convenience store. The trial court also stated:

> And you had no qualms, Mr. Williams, to go in there and take money from somebody else. It's not like you needed it. You had a job. You come from a good family. Your mom and dad know right and wrong. They taught you right and wrong. But you wanted to be cool, and you decided to go hit this lick. That's the stupidest thing I've ever heard in my life.

Appellant acknowledged it was stupid.

Appellant's mother also testified. She was surprised to see her son on the crime bulletin that morning, called him, and told him he needed to clear his name. He was a good kid, but people could "intimidate him and make him a follower." Other than skipping school, appellant had not been a problem, and his mother had never known him to be violent, have a weapon, or be in a gang. He was not raised like that.

In closing, appellant's counsel requested the trial court to give appellant another chance and place him on community supervision in light of the fact he had no history of committing felonies. The State, however, requested that appellant receive a ten-year sentence due to his criminal history and his minimization of his role in the aggravated robbery.

The trial court then stated:

> . . . I don't know what to say. You chose to be here by your decision that night. I don't know why. Maybe you did think it was cool. Maybe you were influenced by your friends and you couldn't tell them no. But you were taught right and wrong by your family. And you've done this to yourself by saying yes.

> You didn't have any qualms about going with your friend [Monroe] and this other guy, no qualms whatsoever. And I do believe you knew exactly what you-all were doing before you entered that store. I believe you knew there was a gun. You may

want to minimize it but I believe you knew that. You took a gun. Why you took that gun, I don't know why.

The reason you go in there is not because you needed the money, but just to be cool. That's just absolutely – I don't even know when your mother is sitting here listening to all of this, what's going through her mind, how disappointed she must be.

. . . it's a difficult decision for this Court, but I do accept your plea of guilty.

I find that you are guilty of this offense. And I'm going to sentence you to seven years in the Texas Department of Corrections . . . .

. . . I hope that when you get out, this will be the last time you ever do anything. I do believe there's good in you, but you chose the wrong path. And you had every opportunity to tell him no, and you chose yes without a hesitation.

And that's what bothers me the most, that you just went along without any hesitation. Took a gun. Knew there probably was going to be a gun involved. And there was two people in that store that could have lost their lives. And you could have lost your life.

So I don't believe you're eligible for -- I don't believe this is a case where I could give you probation. And, therefore, I'm giving you seven years.

### INEFFECTIVE ASSISTANCE OF COUNSEL

In his first issue, appellant argues his counsel rendered ineffective assistance by failing to clarify that appellant was eligible for community supervision when the trial court indicated it could not grant community supervision. The State responds that the trial court never stated appellant was not eligible for community supervision.

To prevail on an ineffective assistance of counsel claim, a defendant must prove by a preponderance of the evidence both that (1) his counsel's representation fell below an objective standard of reasonableness and (2) the alleged deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984); *see Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006); *Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003). We presume a counsel's representation fell within the wide range of professional assistance and was motivated by legitimate trial strategy. *See Rylander*, 101 S.W.3d at 110. "An ineffective-assistance claim

must be firmly founded in the record and the record must affirmatively demonstrate the meritorious nature of the claim." *Menefield v. State*, 363 S.W.3d 591, 592 (Tex. Crim. App. 2012) (internal quotations omitted). If the record is silent as to the reasons for counsel's actions, we will not find counsel's performance deficient unless it was "so outrageous that no competent attorney would have engaged in it." *Id*. at 593. To establish prejudice, a defendant must show a reasonable probability that, but for counsel's errors, the proceeding's result would have been different. *Strickland*, 466 U.S. at 694; *Nava v. State*, 415 S.W.3d 289, 308 (Tex. Crim. App. 2013). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694; *Nava*, 415 S.W.3d at 308.

Appellant was eligible for deferred adjudication community supervision for the aggravated robbery, a first degree offense with a range of punishment from five to ninety-nine years or life and a fine not to exceed $10,000. *See* TEX. CODE CRIM. PROC. ANN. art. 42A.102(b); TEX. PEN. CODE ANN. §§12.32 & 29.03(b). And, during the hearing, both appellant and his counsel requested that the trial court place appellant on community supervision.

In asserting the trial court indicated it could not grant community supervision, appellant relies on the following statement:

> So I don't believe you're eligible for -- I don't believe this is a case where I could give you probation. And, therefore, I'm giving you seven years.

Although the trial court initially used the word "eligible," it then paused and clarified that it did not believe "this is a case where I could give you probation." In whole, the trial court's statement indicates it believed community supervision was inappropriate under the facts of the case, and not that appellant was ineligible for community supervision. Indeed, just before making the statement, the trial court set out a number of factors that supported appellant's sentence. These factors included: (1) the trial court's belief appellant knew exactly what the men were doing before they entered the store and that one of them had a gun; (2) appellant stole a gun; (3) appellant took part

without hesitation or qualms and because he thought it was cool; (4) appellant had the opportunity to say no; (5) appellant did not need the money; and (6) appellant was taught right and wrong by his family.

Nothing in the record establishes the trial court did not consider, or was unaware of, community supervision as an option in assessing appellant's sentence. Accordingly, we cannot conclude counsel's failure to clarify appellant's eligibility for community supervision when the trial court pronounced the sentence constituted deficient performance falling below an objective standard of reasonableness.[1] Accordingly, we overrule appellant's first issue.

## DUE PROCESS

In his second issue, appellant asserts the trial court failed to act in a neutral and detached manner and imposed an arbitrary sentence in violation of appellant's due process rights. Specifically, appellant contends he is entitled to a new trial because the trial court failed to consider the "overall evidence" and relied on his "good family background as a primary factor in its decision to impose a sentence of confinement instead of community supervision."

Due process requires a neutral and detached trial court. *See Brumit v. State*, 206 S.W.3d 639, 645 (Tex. Crim. App. 2006). A trial court violates a defendant's due process rights by arbitrarily refusing to consider the entire range of punishment for an offense, refusing to consider evidence, or imposing a predetermined punishment. *See Ex parte Brown*, 158 S.W.3d 449, 456–57 (Tex. Crim. App. 2005); *Cabrera v. State*, 513 S.W.3d 35, 38 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd); *Jefferson v. State*, 803 S.W.2d 470, 471 (Tex. App.—Dallas 1991, pet. ref'd). We presume the trial court was neutral and detached unless there is a clear showing to the contrary. *State v. Hart*, 342 S.W.3d 659, 673 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd); *see Brumit*,

---

[1] Appellant's brief also states that counsel's "erroneous advice to Appellant that community supervision was available fell below an objective standard of reasonably professional judgment." But, as discussed above, appellant was eligible for community supervision; thus, any such advice was not erroneous and could not constitute ineffective assistance.

–6–

206 S.W.2d at 645 ("Absent a clear showing of bias, a trial court's actions will be presumed to have been correct.").

Here, the trial court heard punishment evidence and counsel's arguments. The trial court twice referred to the fact that appellant's parents had taught him the difference between right and wrong. But, as described above, that was just one of several factors the trial court highlighted in assessing punishment. The record is devoid of any statements by the trial court or other evidence indicating appellant's good family background was a "primary" factor in its determination. Because there is no showing of bias in the record, we presume the trial court's actions were correct. *See Brumit*, 206 S.W.2d at 645; *compare Ex parte Brown*, 158 S.W.3d at 454–57 (due process violation when record showed trial court promised twenty-year punishment upon deferring guilt finding and, later, assessed the promised punishment after applicant pled true to allegations at adjudication hearing); *Jefferson*, 803 S.W.2d at 471–72. Accordingly, we overrule appellant's second issue.

We affirm the trial court's judgment.


/Ada Brown/
ADA BROWN
JUSTICE


Do Not Publish
TEX. R. APP. P. 47.2(b)

180316F.U05

–7–



# Court of Appeals
# Fifth District of Texas at Dallas
## JUDGMENT

STEVEN EARL WILLIAMS, Appellant

No. 05-18-00316-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 283rd Judicial District
Court, Dallas County, Texas
Trial Court Cause No. F17-76867-T.
Opinion delivered by Justice Brown;
Justices Bridges and Nowell participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 24th day of April, 2019.